·Ex-parte Samuel J. Peacock et al.

1. The term "Mayor's Court," as used in the eleventh secti·m of the fifth article of the Constitution in defining the appellate jurisdiction of the Circuit Courts, is generic and inc udes any court organized under legislation pursuant to the thirty-fourth section of the same article, which section authorizes the Legislature to "establish in incorporated towns and cities, courts for the punishment of offences against municipal ordinances." It is not essential that the court should be presided over by a Mayor.

2. The Circuit Courts have no power to try a case *de novo*, or as if it had never been tried before, on an appeal from a "Mayor's Court."

3. The second section of the tenth article of the charter act of the city of Jacksonville (Chapter 3775) gives express power to its municipal court to commit any person convicted before it, if he does not forthwith pay the fine and costs adjudged against him.

4. The provisions of the charter act of Jacksonville allowing an appeal from its municipal court, and providing that the appellant shall be released upon entering into bond conditioned "to appear before the court to which the cause is appealed, and to abide by and perform the judgment thereof," was intended to suspend the execution of the judgment of the municipal court pending the appeal, but does not take away the power of that court to enforce its judgment by re-arrest and commitment after an affirmance of the judgment. The power of commitment given to the court is, after an affirmance of the judgment on an appeal, the same as if an appeal had not been taken.

5. A judgment rendered by the Circuit Court on an appeal from the municipal court of Jacksonville, and having formal recitals and adjudging that the judgment and sentence of the latter court "is affirmed" and that appellant pay the costs of the appeal, stating the amount, is a proper judgment of affirmance on an appeal under the above provisions of the charter act as to appeals.

6. The ordinance of Jacksonville declaring it unlawful for any person to keep open on the Sabbath day any bar room, or other place where cider, vinous, malt, fermented or spirituous liquors of any kind are sold or kept for sale, or keep open "any door or aperture thereof which could or might be used as a means of ingress

or egress to such premises or in such manner as the public could be admitted," or to sell, offer for sale, give or dispose of any such liquors on the Sabbath day, is not void as being inconsistent with the laws of this State, or on account of vagueness or uncertainty.

7.  The first paragraph of the seventh section of the Jacksonville ordinance, number 14, approved April 20, 1888, prohibiting the keeping open on the Sabbath day any bar room or other place where liquors are sold or kept for sale, or the sale or offer for sale of liquors on that day, is not repealed by ordinance number 23, approved June 14, 1888, providing it shall be unlawful to keep open any store, shop or other place of business, or to sell, or dispose of any goods, etc., on the day stated. Nor does the latter ordinance repeal the last sentence of the third paragraph of the seventh section of ordinance number 14, except in so far as such last sentence applied to the first sentence of the third paragraph of the same section.

8.  An order or judgment committing a convict t · the custody of a proper officer of the court until the fine, or fine and costs shall be paid, is correct, and the usual common law form ; and it is the duty of the officer to confine the prisoner in the jail or other place provided by law for his confinement.

9.  A sentence or judgment of the municipal court of Jacksonville which commits the person convicted to the cus·ody of the Chief of Police until the "fine," or "fine and costs," as the case may be, is or are paid, does not constitute indefinite imprisonment in violation of the provisions of the eighth section of our Bill of Rights that indefinite imprisonment shall not be allowed.

10.  The provisions of the charter act of Jacksonville for putting persons committed in default of payment of fine and costs, to labor and allowing them credit and prescribing the maximum number of days any convict may be required to labor, is a guaranty against indefinite imprisonment of persons held under judgmª nts of the municipal court of that city.

11.  A *capias* issued upon a judgment of the municipal court of Jacksonville and stating the date of the judgment, and the amount of the fine imposed, and that the conviction was for a violation of an ordinance of the Mayor and Council of the city, is not fatally defective, nor so indefinite as to be *prima fa·ie* invalid.

12.  A *capias* which recites the judgment of a municipal court imposing a fine and costs, and its affirmance by an appellate court. and di-

rects the officer to proceed to collect the amount of the fine and costs, and, in the event of a refusal to pay, to enforce the order of said municipal court "by taking the defendant into custody and keeping him until the fine and costs shall have been paid in full, does not direct an enforcement of the costs adjudged by the appellate court.

## STATEMENT.

Samuel J. Peacock, James E. Cashen, Samuel Houston and Moses McDonald have obtained a writ of *habeas corpus* returnable before this court. The petition alleges that they are detained in custody without lawful authority, and illegally restrained of their liberty by Paul Phillips, the Chief of Police of the city of Jacksonville, in the municipal court room in and of that city, by virtue of a warrant of arrest issued under the following circumstances : petitioners were convicted in such municipal court on the charge that they, respectively, were in possession of certain bar rooms where spirituous and malt liquors were then kept for sale in certain buildings in that city, and, being so in possession, petitioners did then and there keep the bar rooms open in such manner as that the public could be admitted. That upon such convictions petitioners were sentenced " to pay fines, respectively, or committed to the custody of the Chief of Police until said fines were paid." That they appealed the causes to the Circuit Court of Duval county, and to perfect the appeals, gave bonds and were released, and upon hearing of the causes upon appeal " the judgment of the lower, or said municipal court, was affirmed, but no judgment other than affirmation was entered therein." That afterwards on July 17th, 1889, the municipal court issued a writ of arrest against petitioner:, respectively, commanding the officers of said court to collect the fines imposed as aforesaid, and to enforce the order of said court in the event of refusal of petitioners, respectively, to pay, by taking them into custody and safely keeping them until such times as the fines and

costs shall have been paid, and they have been arrested and are now unlawfully in custody.

The petition further states that one illegality of their detention is, among other grounds of illegality, that the appeal bonds drawn in conformity to the statute governing in such cases, provides that petitioners should be released upon giving such bonds, and that having been so released, there is no authority of law for their re-arrest and detention to coerce the payment of the fines.

The return shows, taking the case of Peacock as a type of all, that Peacock was charged with having, contrary to the ordinance of said city of Jacksonville, in such cases provided, on the 10th day of June, 1888, the same being the Sabbath day, in the city of Jacksonville, kept open " in such manner. as that the public could be admitted," a described bar room, of which he was then in possession, and where malt, fermented and spirituous liquors were kept for sale, and that thereby he was a disorderly person, and that after having moved before the municipal court of the city of Jacksonville to quash the complaint, on the ground that he was not properly put on his guard, (which motion was overruled and the ruling excepted to) he, on the 13th day of that month, pleaded not guilty, and the evidence of witnesses for the prosecution, their names being given, having been heard, the prisoner offering none, he was found guilty and fined $100, and it was "ordered" that he be committed to the custody of the Chief of Police until the fine is paid, and from this judgment he appealed, within three days, to the then ensuing fall term of the Circuit Court of Duval county.

The appeal bond was approved by the Judge of the municipal court, recites the conviction and is conditioned that if Peacock shall appear before the Circuit Court at the term stated and " abide the judgment of said court therein," the

bond shall be void, but otherwise remain of full force and virtue.

The appeal was heard in Duval Circuit Court, and the entry in that court is as follows:

| City of Jacksonville vs. Samuel J. Peacock. | Appeal from Municipal Court. Judgment affirmed. Appellant to pay costs. |
|---|---|

This cause coming on to be heard on appeal upon the transcript of record and proceedings of the municipal court of the city of Jacksonville, from which it appears that on the 13th day of June, A. D. 1888, the said Samuel J. Peacock, appellant, was convicted of a violation of an ordinance of the Mayor and Council of said city, and was sentenced by the Judge of said municipal court to pay a fine of one hundred dollars, and in consideration thereof it is now considered and adjudged that the said judgment and sentence be and the same is affirmed, and that the appellant pay the sum of $1.00 for the costs of this court incurred on this appeal.

On the 17th day of July, the above action of the Circuit Court having been certified to the municipal court, the Judge of the latter court issued a warrant, directed to the City Marshal of said city, reciting that on the said 13th day of June, 1888, the said Peacock was convicted in the municipal court " for a violation of an ordinance of the Mayor and Council of said city, and was sentenced by the Judge of said municipal court to pay a fine of one hundred dollars and costs," and that the judgment had, on appeal to the Circuit Court aforesaid, been affirmed, and the same duly certified to the municipal court, and directing the City Marshal to " proceed to collect the amount of said fine and costs " from Peacock, and in the event of his refusal to pay the same, to " enforce the order of said municipal court by taking " him "into custody and safely keeping him until such time as the said fine and costs shall have been paid in full."

Upon the approval of the appeal bonds, the prisoners were, respectively, released, but they have been arrested on the warrants issued subsequent to the affirming action of the Circuit Court on the judgments of the municipal court, and are now held by the Chief of Police under the same.

II. The third paragraph of the seventh section of ordinance 14, approved April 20th, 1888, is as follows: " It shall be unlawful for any person to keep open any store, shop or other place of business, or to sell or dispose, or offer for sale, or to dispose of any goods, wares, merchandise, goods or chattels on the Sabbath day within the limits of the city of Jacksonville, provided drug stores for the sale of drugs and medicines, including the filling of prescriptions, may be had and sold ; also boarding houses, hotels, restaurants or other places where one or more boarders are regularly lodged and boarded, may transact business for the accommodation of the public on the Sabbath day, but no spirituous, vinous, malt or fermented liquors of any kind as aforesaid shall be used, given, sold or kept for use or sale as a beverage or otherwise therein on such day. Any person or persons violating any of the provisions of this section be and the same are hereby declared to be disorderly persons, dangerous to the peace and morals of the city, and he, she or they shall on conviction before the municipal court be punished as provided in section 1 of this ordinance." ...

Ordinance 23 is as follows: " An ordinance relating to the transaction of business on the Sabbath day.

"*Be it ordained by the Mayor and Council of the city of Jacksonville :*

"Section 1. It shall be unlawful for any person or persons to keep open any store, shop or other place of business, or to sell or dispose of or offer to sell or dispose of any goods, wares, merchandise or chattels on the Sabbath day, com-

monly called Sunday, within the limits of the city of Jacksonville, provided that drug stores for the sale of drugs and medicines, including the filling of prescriptions, may be kept open for that purpose; also boarding houses, hotels, restaurants or other places where one or more boarders are kept and lodged, may transact business for the accommodation of the public on that day, but no spiritous, vinous, malt or fermented liquors of any kind shall be given, sold or kept for sale as a beverage or otherwise therein on that day, and provided, that newspapers, cigars, soda-water, ice-cream, bread, fruit, cakes, ice and milk may be sold and places kept open for that purpose subject to such restrictions as the Mayor may direct, but none of these articles shall be sold or given away in any store or place where spirituous, vinous or malt liquors are kept for sale. Any persons violating any of the provisions of this ordinance are declared to be disorderly persons, and shall on conviction thereof be punished by fine not exceeding two hundred dollars, or by imprisonment not exceeding ninety days.

"SEC. 2. The third paragraph of section 7 of an ordinance to provide for the preservation of the public peace and morals, and for the good order and government of the city of Jacksonville, passed April 20th, 1888, (except the last sentence thereof prescribing penalties, is hereby repealed,) but this repeal shall not affect any prosecution already commenced for any offence under section 7. Approved June 14th, 1888."

*Frank W. Pope, O. J. H. Summers, John E. Hartridge* for Petitioners.

The municipal court of Jacksonville has only such powers as are expressly given by its charter, or necessarily implied therefrom. Dillon Munic. Cor., vol. 1, page 23, §16.

§89, page 115, §91, p. 117; *Ex-parte* Burnett, 30 Ala., 461;
U. S. Digest, vol. 9, p. 414, §146.

.The charter does not expressly give its power rearrest pe-
titioners and commit them in default of payment of fine.
See Jacksonville Charter Acts of 1887, p. 176, *et seq.*

The implied power is not given, because it is not neces-
sary to the collection of the fine. The city can sue on the
bond. 23 Ala., 722, U. S. Digest, page 417, §416 in vol. 9.

Did such implied power exist in the charter it could not
be exercised until by ordinance a method of procedure was
adopted. No such procedure, it is admitted, is prescribed
by ordinance. U. S. Digest, vol. 9, p. 414, §146; Ex Bruild,
30 Ala., 461.

Municipal charters should be construed strictly by the
courts, and all doubts be resolved in favor of the public. U.
S. Digest, p. 416, §205, vol 9. The ordinance under
which petitioners were convicted is void, as being not in
consonance with our laws, vague and uncertain. See
the ordinance. U. S. Digest, Vol. 9, p. 415, §§181, 204,
and authorities there cited.

The said ordinance is repealed.

See ordinance No. 23.

The sentence or judgment of the court is unauthorized. The
court is without power to commit to the Chief of Police for
an indefinite period. See City Charter, 59 Ala., 654;
Bishop Cr. Pro., vol. 1, §§1135, 1137, 1138, (note 2.)

The warrant of rearrest under which petitioners are held
is fatally defective in not indicating what ordinance of the
city had been violated; and in adjudging one dollar's cost
for the clerk of the Circuit Court, with the affirmation in
behalf of the city.

See Howant of Rearrest, U. S. Dig., p. 418, §237; Hand
on Habeas Corpus, pp. 371, 372, 376, 377.

The court's attention is drawn to article 10, §8, City

Charter, laws of 1887, p. 177, where it is provided that when parties have given bonds and forfeit them, the court shall proceed to enter up judgment, and the Recorder issue a *fieri facias* to the marshal, who shall execute the same. I submit this forbids the issuance of a *capias.*

*J. M. Barrs* for the City of Jacksonville.

We claim that the record shows petitioners convicted of violation of section 7 of Ordinance No. 14, on charge of keeping open bar rooms on Sunday. Houston was convicted twice on above charge and once for selling liquor on Sunday. All in violation of sec. 7 of Ord. No. 14, the penalty for which is fixed by sec. 1, of same ordinance.

Section 3 of Ordinance No. 17 provides for imprisonment on failure to pay fine, as also do sections 2 and 10 of Article X of the city charter.

The charter provides that on giving an appeal bond the prisoner " shall be released " and petitioners insist that the giving of bond releases them from all liability for violation of law excepting their liability civilly on the bond.

Sec. 6 of Article X of the city charter provides for the giving of bonds by persons arrested before trial, for appearance, upon which they "may be released." Does this mean that they cannot be again arrested if they do not appear for trial and that the city is then relegated to a civil remedy an the bond ? It surely seems to me that this was not the intention of the Legislature. And yet the provisions for release on giving bond are the same in sections 2 and 6 of Article X of the charter. That this was not the intention in section 6 is evident from the fact that no bond be required for over $250.00 while the municipal court has authority to fine as much as $500.00.

Powers essential to the exercise of authority expressly granted will be implied, and where no procedure pre-

scribed for the enforcing of a judgment affirmed by the Circuit Court, the municipal court will be authorized to enforce its judgment affirmed the same as though the appeal had not been taken—the bond being simply a supersedeas bond, to prevent the necessity for the appellant lying in jail pending appeal, just as an appearance bond is for the same purpose.

There being no requirement for the entry of judgment on appeal by the Circuit Court, in any specified manner, any entry of judgment affirming the judgment of the municipal court is sufficient.

The provision of section 8, Article X, city charter, refers only to bond for appearance before the municipal court.

The orders to hold the petitioners until the fines are paid are not for an indefinite period, the charter providing for an allowance per day for imprisonment and limiting imprisonment to three months for any one offense—sec. 10 of Article X of the charter.

If the sentence of the municipal court is imprisonment, all the prisoner has to do, according to the claim of petitioners, to avoid the sentence is to give bond and appeal, for that releases him and he cannot be again arrested.

It was evidently the intention of the Legislature in granting the charter to enable the municipal court to enforce its sentences and any construction of the charter prohibiting the rearrest of prisoners makes the enforcement of the judgments of the municipal court in some cases difficult and in other cases impossible.

RANEY, C. J.: The first section of the 10th article of the act establishing the municipality of Jacksonville, chapter 3775, Laws of 1887, provides for a municipal court for the trial of all offences against the municipal ordinances, and section 2 enacts that "all persons convicted by said

court shall forthwith pay all fines and costs assessed against them, in default whereof they may be committed; provided that if such persons shall appeal within three days from the judgment of the court they shall be released upon entering into bond with good and sufficient security in double the amount of the find and costs assessed against them, conditioned to appear before the court to which the cause is appealed, and to abide by and perform the judgment thereof."

The third, fifth and tenth sections of the same article are as follows:

SEC. 3. The Recorder shall keep a docket upon which shall be entered all causes tried in said court; said docket shall show by appropriate entries thereon the style of the cause, the nature of the offence, the judgment of the court, the amount of fines and costs, the satisfaction of the judgment, whether by payment of the fines and costs or by committal or by pardon or remission of the City Judge. The docket shall also show the names of the witnesses examined in each case, and the date of the appeal, if granted.

SEC. 5. The Recorder shall return and file with the Clerk of the Appellate Court, within three days, the papers in all cases appealed, and he shall endorse on the warrant in each case the names of the witnesses on behalf of the city.

SEC. 10. Every person committed, after conviction, to the jail or house of correction, shall be required to work for the city, at such labor as his health and strength will permit, within or without said city, not exceeding eight hours each day; and for such work and laber the person so employed shall be allowed, exclusive of his board, a credit upon his fine and costs, at the rate of seventy-five cents per day, until the whole amount is discharged, when he shall be released. No person shall be compelled to work longer than three months for any one offense.

The fourth section of the third article authorizes the Mayor and City Council to establish jails and houses of detention and correction, and to make regulations for the government thereof.

The Constitution of this State, section 11, Article V, gives the Circuit Courts " final appellate jurisdiction in all civil and criminal cases arising in the County Court, or before the County Judge, of all misdemeanors tried in Criminal Courts, of judgments or sentences in any Mayor's court, and of all cases arising before Justices of the Peace in counties in which there is no County Court." Section 18 of the same article gives the County Courts which may be established by the Legislature in any county, original jurisdiction of all misdemeanors, and final appellate jurisdiction in civil cases arising in the courts of Justices of the Peace, and provides that the trial of such appeals shall be *de novo* at the option of the appellant. In counties, however, where there is a Criminal Court of Record, the County Court has no criminal jurisdiction. Section twenty-two of this article gives Justices of the Peace, in counties having no County Court, jurisdiction " in such criminal cases, except felonies, as may be prescribed by law," and provides that "appeals from Justices of the Peace to the Circuit Courts in criminal cases, shall be tried *de novo*, under such regulations as the Legislature may prescribe."

The term " Mayor's Court " includes any court organized under legislation pursuant to section 34, of Article V of the Constitution, which section is as follows : " The Legislature may establish in incorporated towns and cities, courts for the punishment of offences against municipal ordinances." It is not essential that the court should be presided over by a Mayor. The term was used to designate the class of courts contemplated by the section quoted.

Such courts have usually been presided over by a Mayor, and called Mayors' courts in this State.

We cannot say there is no room for argument that the Legislature intended by the legislation set out above, to give the Circuit Court power to try *de novo* cases appealed from the Municipal Court of Jacksonville, yet we do not think such power can be given it under our Constitution. The language of section 11 of Article V set out in the preceding paragraph of this opinion, defining the appellate jurisdiction of the Circuit Courts, must in view of the decisions of this court construing similar language in the former Constitution as to the appellate jurisdiction of the Circuit Courts, be held, if considered alone, to exclude such power as being an exercise of original, and not appellate, jurisdiction. State *ex rel.* vs Baker, 19 Fla., 19 ; State *ex rel.* vs. Vann, Ib., 29 ; State *ex rel.* vs. King, 20 Fla., 399 ; State *ex rel.* vs. McClellan, 25 Fla., —; 5 So. Rep., 600. These decisions, except the last one of them, were fresh and must have been prominently in the minds of the framers of the present Constitution and of the people when that instrument was formulated and adopted. The express provisions as to trials *de novo* in County Courts in *civil cases*, and in the Circuit Courts in *criminal cases* on appeal from Justices of the Peace, to be found in sections 18 and 22, indicate a purpose to except such appeals from the general effect of the language of section eleven referred to. It is a fact, moreover, that the Legislature of 1887 has provided for the trial of appeals to the Circuit Court from Justices of the Peace in civil cases on bills of exception. *Vide* Chapter 3716, Laws of 1887. See also Chapter 3584, Laws of 1885.

The provisions of the charter act of the city of Jacksonville involved in this cause must then be construed with reference to the Constitution which limits the appellate

jurisdiction of the Circuit Court over Mayors' courts to a revisory power, and excludes a trial of the cause anew in the Circuit Court, as if the same had never been tried in the lower court.

Under this view of the Constitution and the legislation in question, our opinion is that the judgment to be rendered by the Circuit Court of Duval county on an appeal from the municipal court is one of affirmance or reversal.

The power of the municipal court to commit a person convicted before it if he does not forthwith pay the fine and costs assessed against him, does not rest upon inference or implication, but is expressly given by the second section of the tenth article of the charter act. Construing this section and the tenth section of the same article and the fourth section of the third article, all of which are set out above, together, it is evident that the commitment is to be to the jail or to the house of correction, and then the convict shall be required to work at the compensation and in the manner provided by the tenth section, and thereby he discharges the fine and costs assessed against him and obtains a release from imprisonment.

It is argued, however, that the charter act does not give, either expressly or by implication, the power to rearrest and commit a person who, having been convicted, has taken an appeal and been released on giving an appeal bond as required by the statute.

The basis of this contention is an assumption that as soon as the appeal is perfected by giving an acceptable bond, the person convicted is not only released from custody, but the judgment can never more be a basis for the issuance of a warrant for its enforcement and satisfaction by arrest and commitment and labor, if no such warrant had been issued prior to the taking of the appeal, or for its further enforcement, if at the time the appeal was taken

the appellant had actually been committed and put at labor under the judgment. In other words, the assumption of the argument is that an appeal has the effect, even after the affirmance of the judgment by the appellate court, to take from the municipality the power *expressly* given to its court to enforce its judgments by the arrest and imprisonment of the offender. The real proposition is that a power expressly and clearly granted to a municipality, or its court, has been impliedly taken away in certain cases by a regulation of the right of appeal.

The express provision of the statute as to the effect of the appeal is that if the person convicted shall, within three days after the judgment, appeal from it, he " shall be released " upon entering into bond with good and sufficient security in the amount specified, conditioned to " appear before the court to which the cause is appealed and abide by and perform the judgment thereof."

The statute does not give power to the Circuit Court when it finds that the record before it sustains a conviction, to proceed and impose a different amount of fine from that adjudged by the sentence of municipal court; this is true whether it be that any provision has or has not been made for carrying to the appellate court, for review, the evidence upon which the case was decided below. Moreover, as concluded above, there can under the Constitution be no examination of witnesses, or trial anew without regard to that in the lower court. As then the judgment of the Circuit Court must as the law now stands be one either simply of affirmance or of reversal, the question arises whether or not a judgment of affirmance can be in the form which has been entered in these cases by the Circuit Court, or is it necessary that such court shall enter an extended judgment or sentence against the appellant in the same terms sub- stantially as that entered by the municipal court? If it is

entered in the latter form then it will be the judgment of that court, not simply as an appellate tribunal passing upon the errors of an inferior court, but its independent judgment on the case made by the record before it to be enforced by the same writs and officers as any sentence it might render in an original case would be enforceable. We do not think the statute contemplates a proceeding culminating in the Circuit Court enforcing through its writs and officers the penal ordinances of the city of Jacksonville.

The judgments of the Circuit Court in these cases by which the judgments of the municipal court are " affirmed " are nothing more or less than the judgment of the former court that the judgment of the latter tribunal are legal and should be paid, and if not paid, enforced in the manner prescribed by the charter statute, and they in the form used are as much within the terms of the appeal bond as they would be if they expressly stated, as a result of such affirmance, that the appellant should pay the fine and costs adjudged by the lower court, or as a judgment, of the kind referred to in the preceding paragraph as not contemplated by the statute, would be, if such a judgment had been provided for and rendered.

It may be remarked here that the form of the Circuit Court judgments is substantially the same as that used in the Supreme Court in affirming judgments.

The purpose of the statute is that the appeal, when perfected by giving the bond' shall operate as a supersedeas to the execution of the judgment pending the appeal, and one element of this supersedeas is that the convict shall be released from custody. A discharge from custody is by express provision of law, a feature of a supersedeas on writs of error in criminal cases not capital, under the statutes of this State, an order for both the writ of error and the discharge being required. Though pending the appeal

the municipal authorities cannot enforce the sentence of the municipal court against the convict, yet upon the affirmance of the judgment by the Circuit Court, it becomes of the same force and effect as if the appeal had not been taken and perfected. The sole purpose to be seen by us in these appeal provisions is, that the convict may test in an appellate court the legality of his conviction, and that while doing so, the execution of the sentence should be stayed in all respects, including that involving his liberty. To give them a further effect is to extend them outside of and away from the ordinary purpose of an appeal and supersedeas. They say that by the provisions for the release of the convict, and the terms of the condition of the appeal bond, the Legislature intended to relieve any one appealing and giving the bond from process against his person after the legality of his conviction and sentence should be affirmed by a higher court, is to give these provisions a construction not within the meaning of the terms employed when considered with reference to the particular subject matter as to which they are used, and to impart to them an effect beyond the reason and purpose of such provisions. The statute has given express power to commit a person convicted and fined before the municipal court of Jacksonville, and when a convict has appealed, and the judgment appealed from has been affirmed, and the affirmance certified back, the appeal provisions have served their only purpose, and the judgment of the municipal court is of the same force and effect as it was before the appeal was taken, and while the effect of the affirmance on appeal is to preclude any further test of the judgment by appeal, it does not prevent the enforcement of the judgment in the ordinary manner provided by the statute.

Counsel for petitioners invoke in support of their position the eighth section of the tenth article of the statute,

which is that " in all cases where the parties accused have been released upon bonds or other security, if they fail to appear, the city court shall proceed to enter judgment upon said bonds or other security for the full amount of the penalty, and the Recorder shall, at the expiration one day from the rendition of such judgment, issue a *fieri facias* to the Marshal, who shall execute the same."

This section does not apply to persons who have been convicted, but to those who have merely been "accused." Its meaning is to be ascertained by a reference to the sixth section, which enacts that all persons arrested for the violation of any ordinance, or any municipal misdemeanor shall be immediately confined in the jail, or house of detention, and "shall remain therein until discharged or tried by the city court, unless they shall give proper security for their appearance before said court, in which event they may be released." This section also gives power to the Chief of Police, and officers in charge of the jail or house of detention, to take "from persons arrested," bonds or other security for their appearance before the city court; and the seventh section makes it the duty of the Chief of Police to report to the city court every morning at nine o'clock all arrests and committals made during the preceding day and night, the names of the accused, and witnesses, the offences charged and the bonds or other security of their release.

When we consider these three sections together it becomes apparent that the sole purpose and effect of the eighth section is to give the municipal court power to estreat the bail security of a defaulting accused person, and to regulate the practice in such cases. The *release* which the accused is awarded by the sixth section on giving the bail security, is, of coure, limited to the time for his appearance before the municipal court to be tried. We

can hardly imagine a contention that it means more, or that proceedings under the eighth section would preclude the subsequent arrest and trial of the offender.

This release on security was intended for the benefit of the accused, and not as a disability or limitation upon the powers of the municipality or its court to enforce its ordinances. The same observation is equally applicable to the release in the case of an appeal, and the real nature and purpose of the provisions of the law in the latter case find illustration in those of the former.

II. Another alleged ground of the illegality of the detention is, that the ordinance under which these convictions were made is void as being not in consonance with our laws, vague and uncertain.

Ordinance No. 14 is one " to provide for the preservation of the public peace and morals, and for the good order and government of the city of Jacksonville," (approved April 20th, 1888,) and the *first paragraph* of its seventh section provides that it shall be unlawful for any person or persons owning, controlling or conducting or acting as agents, proprietors or persons in possession of any bar-room, storeroom, saloon, premises or other place of any kind, where beer, ale, cider, wine, vinous, malt, fermented or spirituous liquors of any kind are sold or kept for sale within the limits of the city of Jacksonville by drink or otherwise, " to keep the same open, or any door or aperture thereof which could or might be used as a means of ingress or egress to such premises, or in such a manner as the public could be admitted, or sell, offer for sale, give or dispose of any such spirituous, vinous or malt liquors aforesaid, on the Sabbath day," and all such places shall be closed " from 12 o'clock at night until 5 o'clock in the morning."

The last sentence of this section declares any person or persons violating any of the provisions of this section to be

disorderly persons, dangerous to the peace and morals of the city, and punishable as provided by the first section of the ordinance, *i. e.*, may be fined in such sum, or impris oned such length of time as the Judge of the municipal court may determine, but the fine shall not exceed $500 and no person shall be imprisoned exceeding ninety days, except for the non-payment of fine and costs.

The authorities relied on for support of the proposition that the ordinance is void for the reasons alleged,, are cited as these referred to in sections 181 and 204, pp. 415 and 416, Vol. IX, U. S. Digest. The proposition of section 131, citing Mayor, &c., vs. Hussey, 21 Ga., 80; Haggard vs. Savannah, 12 Ga., 404, and State vs. Caldwell, 3 La. Ann, 435, is, that city ordinances conflicting with the Constitution or with statutes are invalid, and that of section 204, citing Municipality No. One vs. Cutting, 4 La. Ann., 335, and Merriam vs. New Orleans, 14 Id., 318, is that a municipal ordinance must be consonant with the law of the land, but it must receive a reasonable construction, and not be strictly scrutinized to avoid it.

Counsel have not attempted to specify the particular law or laws, the constitutional or statutory provision, with which the ordinance in question is not in consonance, nor do such of the cases referred to as are within our reach, direct our attention to any provision of law as being violated by the ordinance. There is no fatal vagueness or uncertainty in the quoted language of the ordinance ; the use of the word " door " is a sufficient exponent that the meaning of the ordinance is that the " aperture " or other manner of keeping open must be one serving the same purposes of ingress and egress as a door naturally does when kept in a condition that it can be opened by, or ready to be opened for, the public. A reasonable view of the language used

relieves the ordinance of all uncertainty.    4 La. Ann., 335, *supra.*

III. It is also urged that the above provisions of Ordinance No. 14 were repealed by Number 23, and approved June 14th, 1888.

The latter ordinance was not intended to effect the *first paragraph* of the seventh section of ordinance 14, nor the *last sentence* of the *third* paragraph *supra* of that section in so far as that sentence is applicable to the first or second paragraphs.    Ordinance 23 is in effect an amendment of the *first* sentence of the *third* paragraph of the seventh section, and, with other changes, makes one in the penalty, but it expressly excepts the second or last sentence of the third paragraph from its repealing clause, thus continuing it as to all other parts of the seventh section than the first sentence of the third paragraph as amended.

Ordinance 23 expressly provides that the repeal which it effects of the first sentence of the third paragraph shall not effect any prosecution previously commenced for any offence under "section seven," meaning of course, under the *first sentence* of the *third paragraph*, as it repeals no other part of the section.

The purpose of Ordinance 23, as construed by us, will be readily seen on considering it and the third paragraph of the seventh section of Ordinance 14, as given in the statement.

..IV. The judgments of the municipal courts are assailed on the ground that the court has no power to commit to the Chief of Police for an indefinite period.    These judgments are in some cases that the prisoners be committed to the custody of the Chief of Police until the fine is paid, and in others till the fine and costs are paid.

Where the sentence is to pay a fine, says Mr. Bishop, the order of the court should accompany the sentence that the

defendant stand committed until the fine, or the fine and costs, either or both, as the case may be, shall be paid. 1 Bish. Crim. Pro., section 1132. Such is the ordinary and proper form of the order where the common law on the subject has not been changed by statute, and under such an order, or a writ issued in pursuance thereof, it is the duty of the officer, whose function is to enforce it, to imprison the defendant in the jail or other prison provided by law as the place of detention. There is nothing in the charter act of Jacksonville that renders such a form of judgment improper or irregular. Under section ten, *supra*, it is the duty of the Chief of Police, or other authorized ministerial officer, to confine any person convicted and sentenced to pay a fine, and committed to his custody, as in the cases before us, in the jail or house of correction provided by the municipality, and when so committed, such person shall be required to work for the city under the limitations and with the credits therein provided, but it is not necessary or proper that the provisions of this section should be incorporated in the judgment of the court. *Ex-parte* Hunter, 16 Fla., 575; State *ex rel.* vs. Holland, 23 Fla., 123; *Ex-parte* Martini, Id., 343.

The judgment entered by the municipal court in these cases does not of itself constitute indefinite imprisonment, in violation of the eighth section of our Bill of Rights. *Ex-parte* Bryant, 24 Fla.; S. C., 4 So. Rep., 854. The provisions of section ten of the charter act are a guaranty against the indefinite imprisonment of persons held under such judgments of the municipal court.

V. The only point remaining to be considered is, that the warrants "under which petitioners are held are fatally defective in not indicating what ordinance of the city had been violated, and in adjudging one dollar costs for the clerk of

32

the Circuit Court with the affirmation in behalf of the city."

The warrants give the date of the conviction or judgment in the municipal court, and the amount of the fine, and state that the conviction was for the violation of an ordinance of the Mayor and council of the city, as shown in the statement.

Though the writs ot *capias* in these cases are not as specific as they might be, they are not fatally defective, nor so indefinite as to be *prima facie* invalid. They are on the other hand valid upon their face ; they show that they have been issued upon the final judgment of a competent court, and identify and connect themselves with the judgment by its date and the amount of the fine, and show that the conviction is of a class of offences of which the court has jurisdiction. In People vs. Cavanaugh, 2 Parker C. R., 650, where the statute provides that the judgment should state briefly the offence for which the conviction was had, and a copy of the judgment was the sheriff's warrant, and the offence of which the conviction was had was described in the judgment as a " misdemeanor," such description was held to be sufficient.

Without admitting that where a party is held on a *capias* issued upon a final judgment or sentence, that the mere irregularity of the process will authorize a discharge without giving reasonable time to procure a valid *capias*, it being shown that there has been a legal conviction, Matter of of King, 28 Cal., 247, the case before us is, in our opinion, not only one in which the *capias* is not fatally irregular, but also one in which the return, including the accompanying papers, clearly shows that the petitioners have been legally convicted, and are legally held.

It only remains for us to say that the writs of *capias* issued by the Municipal Judge do not in fact direct an en-

forcement of the costs of the Circuit Court, but an enforcement "ot the order of the said municipal court."

The result is that the petitioners must be remanded to the custody of the Chief of Police of the municipality of Jacksonville, under the writs issued by the Judge of the municipal court of that city, for the enforcements of the judgments upon which the same were issued, and judgments will be entered accordingly.