ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY *v.* HOSHALL.

Opinion delivered April 22, 1907.

1. INSTRUCTION—INSUFFICIENCY OF GENERAL OBJECTION.—An instruction, in a suit against a railroad for destruction of a crop by causing an overflow, that "if you find the defendant liable, the measure of damages to the crops is the value of the difference between what was produced and what would have been produced had the water not caused the injury, less the difference between the cost of producing

and gathering what was produced and the cost of producing and gathering an average crop, as you may find from the testimony," is not so far variant from the correct rule for measuring the value of the crop at the time of its destruction as to be prejudicial error, in the absence of a specific objection. (Page 390.)

2.	DAMAGES—DESTRUCTION OF CROP.—Probable value of a crop at maturity may be considered in fixing its value at the time of its destruction where the jury find that the crop would have matured but for the injury complained of. (Page 391.)

3.	LIMITATION OF ACTION—NUISANCE.—Where a thing complained of as a nuisance is not necessarily injurious, but may inflict damage for a while, and then cease, the statute of limitations begins to run from the time the damage is done, and not before, and there may be as many successive recoveries as these are successive injuries. *St. Louis S. W. Ry. Co.* v. *Morris,* 76 Ark. 542, followed. (Page 392.)

Appeal from St. Francis Circuit Court; *Hance N. Hutton,*. Judge; affirmed.

STATEMENT BY THE COURT.

Appellee alleged in her complaint that appellant had negligently allowed a trestle under its track, which was the natural drainage for water from a creek running through appellee's land, to fill up, diverting the creek from its natural course, and causing it to pass over appellee's land; that 60 acres of appellee's land were thus overflowed and the value thereof diminished by the washing away of the soil; and that by reason of such overflow the crops were totally or partially destroyed, all to her damage in the sum of $1,500, for which she asked judgment.

Appellant answered, denying, *inter alia,* that appellant was negligent in allowing the waters of the creek to fill up, and denying any liability for the overflow of appellee's land, and setting up affirmatively that any cause of action appellee might have was more than three years prior to the institution of the suit.

The jury in response to interrogatories returned special findings:

1.	That the negligence of the railway company consisted in not keeping Trestle No. 1363 open.

2.	That the negligent act first occurred within the last three years.

3. That the negligent act was necessarily injurious to the land of plaintiff.

4. There was damage to crops in the sum of $420, and damage by washing of the land $150, making a total of $570, for which a verdict was returned and judgment entered for appellee.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. The evidence shows that the overflow by which the land and crops were injured was not the result of negligence on the part of appellant, but of others over whom it had no control. Parties owning lands subject to drainage by surface water take them *cum onere* subject to any disparagement, either by reason of the natural location or as a result of any proper use of the land by the adjacent land owner, whether upper or lower. 39 Ark. 463; 66 Ark. 271.

2. The second instruction submitted an erroneous view to the jury as to the measure of damages and permitted them to indulge in speculation. 56 Ark. 612; 57 Ark. 512. The instruction also omits the question of what proportion of the damage was properly chargeable to the defendant. 76 Ark. 549.

3. The action was barred. It is in evidence that the water had been flowing over the railroad at that point for 15 years, and it appears to have been a yearly occurrence for the water to flow back over plaintiff's land. 62 Ark. 360.

*N. W. Norton,* for appellee.

1. Appellant mistakes cause for effect. When the stream in question here was diverted by the gradual filling up of under the trestle, the old channel below that point, having less water to carry, would naturally and gradually fill.

2. Appellant could have had an instruction applying the rule as to measure of damages laid down in 56 Ark. 612 for the asking, but did not. 75 Ark. 325; 99 S. W. 73; 74 Ark. 431; 65 Ark. 54; *id.* 255; 66 Ark. 46; 84 S. W. 507: The instruction follows what was pointed out by this court as a proper rule. 76 Ark. 542. See also 57 Ark. 512; 25 S. W. 54; *id.* 1023.

3. On the question of limitations, see 76 Ark. 542.

WOOD, J., (after stating the facts.)  Three special propositions are urged by appellant to reverse the judgment.

First, that the evidence shows that the damage to appellee's land and crops caused by the overflow of which appellee complains was not the result of the negligence of appellant in allowing the trestle under its track to fill up, as alleged, but that the primary and proximate cause of appellee's injury and damage was the filling up of the natural outlets for the water below appellant's trestle; that the natural drainage for the water below the trestle was first obstructed through the fault and negligence of others, not appellant, and that this filling up of the natural drainage far below appellant's trestle continued by gradual processes back towards the trestle until it finally reached the trestle, and caused that to be obstructed, and also the resultant overflow on appellee's land.  The appellee contends, on the other hand, that the negligence of appellant in failing to keep its trestle open so obstructed the natural drainage that there was not sufficient current in the natural watercourses below to keep them free from debris of all sorts, and that the diversion of the water by the filling up of the trestle caused driftwood and dirt to accumulate in the channels below the trestle which gradually increased till the natural streams were obstructed and diverted, which produced the overflow that caused appellee's damage.  It will be observed that this is peculiarly a question of fact.  We do not see that any useful purpose could be subserved by setting out and discussing the evidence bearing upon this issue.  The evidence is set forth *pro* and *con* in the respective briefs.  The court correctly instructed the jury on this issue, and the evidence is sufficient to support the verdict.

Second.  The court gave the following instruction containing three paragraphs: .

"1.  If you find the defendant liable, the measure of damages to the crops is the value of the difference between what was produced and what would have been produced had the water not caused the injury, less the difference between the cost of producing and gathering what was produced and the cost of producing and gathering an average crop, as you may find from the testimony.

"2.  The measure of damages to the land is the difference

in its market value before and since the injury complained of, and caused by the injury, as you may find from the proof.

"3. You will not consider any damage to either land or crops, except such as is proved to have accrued within three years next before the filing of this suit, which was August 14, 1905."

This court in *Railway Company* v. *Yarborough,* 56 Ark. 612, announced the rule for ascertaining the damage caused by the destruction of growing crops from overflow as follows: "The damages recoverable for the destruction of a growing crop by overflow are limited to the actual value of the crop at the time of its destruction with legal interest from the date of injury; such value is to be ascertained from consideration of the circumstances existing at the time of its destruction, as well as at any time before the trial, favoring or rendering doubtful the conclusion that it would attain to a more valuable condition, and from consideration of the hazards and expenses incident to the process of supposed growth or appreciation." See also *Railway Company* v. *Lyman,* 57 Ark. 512; *Little Rock & F. S. Ry. Co.* v. *Wallis, post* p. 447.

The first paragraph of the instruction *supra* does not follow this rule, but it was not so far variant as to be prejudicial error, in the absence of a specific objection or a request for an instruction to meet the views of counsel, and in the form approved by this court. *Brinkley Car Works & Mfg. Co.* v. *Cooper,* 75 Ark. 325. See also *St. Louis, I. M. & S. Ry. Co.* v. *Sparks,* 81 Ark. 187; *Thomas* v. *State,* 74 Ark. 431; *Phoenix Ins. Co.* v. *Flemming,* 65 Ark. 54; *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255; *St. Louis, I. M. & S. Ry. Co.* v. *Pritchett,* 66 Ark. 46.

It was proper for the jury, in determining the present value of the destroyed crops, to take into consideration the difference between the cost of producing a full average crop and the cost of producing the crop that was actually produced. *St. Louis S. W. Ry. Co.* v. *Morris,* 76 Ark. 542. While the paragraph under review did not lay down the correct rule for the measure of the damage, it did contain proper elements for the consideration of the jury, in connection with other facts, in determin-

ing what the value of the crop was at the time of its destruction. Counsel should have asked for a more specific direction as to how the damage should be measured, if they so desired. See *Gulf, C. & S. F. Ry. Co.* v. *Carter,* 25 S. W. 1023.

Probable value of the crop at maturity may be considered in fixing the value at the time the injury occurred to the growing crop where, as in the case at bar, the jury may have found that the crop destroyed would have matured but for the loss in the manner charged in the complaint. *Railway Company* v. *Lyman, supra; Gulf, C. & S. F. Ry. Co.* v. *Nicholson,* 25 S. W. Rep. 54.

Third. It does not appear that there was any negligence in the construction of the trestle. It served the purpose to carry off the water until it was allowed to fill up. The trestle was not necessarily injurious, but only became so by reason of the negligence of appellant in failing to keep it in proper condition. The rule announced by this court in *St. Louis S. W. Ry. Co.* v. *Morris, supra,* is that: "In cases where the nuisance is not necessarily injurious, but may or may not be so, and if it proves to be injurious, the injury continues for a while, inflicts damage, and then entirely ceases, the statute of limitations begins to run from the time the damage is done, and not before; and there may be as many successive recoveries as there are successive injuries, and the statute of limitation runs from the time each of such injuries occurs."

This is the rule here. The clearing out of the trestle, or raising it so that the water could pass through, at any time relieved the obstruction and removed the cause of the overflow and damage. So that, but for appellant's negligence in permitting this condition of obstruction, according to the facts as found by the jury, the injury and damage to appellee would not have resulted. The clearing of the trestle and giving the water free course at any time might remove the cause of overflow. In *Chicago, R. I. & P. Ry. Co.* v. *McCutchen,* 80 Ark. 235, Justice McCulloch, speaking for the court, said: "It (the injury) was not caused by any wrongful act of the railroad company in building an embankment across the ditch and thus closing it up, but the injury resulted from a negligent failure to open the ditch when obstructed by an accumulation of dirt which was allowed to fall in from the embankment. It would

be unjust to presume that the negligence will continue to the permanent injury of the land, and the owner may recover for each successive injury sustained." See *St. Louis, I. M. & S. Ry. Co.* v. *Stephens*, 72 Ark. 127.

We find no reversible error in the other minor questions presented; affirmed.

HILL, C. J., not participating.