CRUMBLEY *v.* GUTHRIE.

4-7445                                                    183 S. W. 2d 47

Opinion delivered November 6, 1944.

*John W. Nance,* for appellant.

*E. M. Fowler* and *Sullins & Perkins,* for appellee.

GRIFFIN SMITH, Chief Justice. Jewel Guthrie owned 240 acres in Prairie Township, Madison County, where she resided and farmed. Crumbley, a resident and stock-raiser of the same county, permitted his cattle to run at large and trespass upon Mrs. Guthrie's strawberry patch, resulting in damages for which $300 was awarded to compensate. Questions for decision on appeal, as expressed by counsel for Crumbley, are shown in the margin.[1]

Mrs. Guthrie planted two and a half acres to strawberries in the spring of 1942. Trespass (recurring) began in March 1943. On two occasions the stock was driven out. Crumbley was informed of what had occurred, but did not respond to notice. Near the last of April when seven head of Crumbley's cattle entered the field, Mrs. Guthrie had them enclosed in her pasture, and in writing informed the owner they were being held pending payment of $100 damages and cost of impounding, ". . . under the law of Sec. 335 of the State Laws." This notice was ignored by Crumbley; whereupon, three appraisers were appointed by a Justice of the Peace to determine extent of the injury. Their report of April 28 was that ". . . damage done [the] strawberry patch [was] $100 for berries"; $1 per month per head for taking care of the stock; 70 cents for impounding them, and cost of

---

[1] (a) Where the complaint alleged unlawful detention of the cattle and the prayer was for possession, . . . and in the alternative for an order restraining sale; and [where by] answer appellee claimed lawful right to possession under the provisions of a stock law and prayed for a return of the cattle, did the Court err in disregarding the issues tendered by the pleadings, and [in] awarding judgment for damages? (b) Where the answer alleged that the land invaded by appellant's cattle is in a stock law district, will the Court take judicial knowledge that a stock law district has been created and a stock law put in force? (c) Did the trial court err in holding that appellee could recover speculative damages for the loss of berries which might have been produced? (d) Did the trial court err in refusing to give consideration to the damage done to the strawberry patch by the horses, mules, and cattle belonging to appellee and her son-in-law? (e) Is the judgment awarded appellee excessive and unsupported by the evidence?

appraisement, $6. This report was given Crumbley, who did not act until informed May 8th that the cattle would be publicly sold May 14. He then filed complaint in Circuit Court, denying Mrs. Guthrie's contention that the cattle were found "damage-feasant" on her land. The proceeding, in effect, was in replevin, accompanied by bond with affidavit for delivery.

Mrs. Guthrie's answer set out the facts just stated. It was expressly alleged that her farm was within a stock law district; that her acts in impounding were in compliance with Sec. 338 of Pope's Digest, and that her losses amounted to $300, etc.

In an amended complaint Crumbley asked that sale of the cattle be enjoined, and that the cause be transferred to Chancery. No issue is tendered in respect of the order of transfer.

(a) It is first contended the Court was in error when it tried the cause on its merit and awarded damages. If it be said that this argument is sound if the only issue had been the right to possession, answer is that replevin is an exclusive legal remedy. The writ might have been awarded Crumbley by Circuit Court had he been content to leave to that tribunal a determination of his rights. But he elected to invoke the aid of Chancery, where, if jurisdiction attached for any purpose, it would be retained for the purpose of decreeing full relief and to avoid a multiplicity of suits. Appellant does not question the Court's power to act, nor assert the principle that jurisdiction of subject-matter cannot be conferred by consent. He merely appeals from action of a tribunal wherein affirmative aid was sought. It will be presumed that some asserted right not discussed in the appeal gave jurisdiction.

(b) In the decree the Chancellor said: "Prairie Township . . . is part of a stock law district wherein it is unlawful for stock to run at large." There was no proof to support this finding. On rehearing in *Skiles* v. *State,* 150 Ark. 300, 234 S. W. 721, there was answer to the appellant's contention that no proof had been intro-

duced showing that a stock law enacted by the Legislature had been put into operation by vote of the people, as prescribed by that statute. The Court, speaking through Chief Justice McCulloch, concluded that adoption of the terms of a statute by election ''. . . is a matter of which the Court should take notice judicially. It is a law in operation in a locality which was within the jurisdiction of the Court, and the Court should take cognizance of it without the necessity of it being brought to the attention of the court by proof.'' We think the defendant below had a right to rely upon this opinion and to rest the matter on allegation, in the absence of proof that the law was not adopted.

(c) The most difficult question is whether the amount awarded necessarily, or by fair inferences to be drawn from a preponderance of the evidence, included speculative elements. Mrs. Guthrie testified that she harvested twenty-nine crates from remnants of plants that would have produced from 200 to 250 crates. . Invasion by Crumbley's cattle occurred before maturity of the fruit; but there is proof that sufficient progress had been made to promise a production much greater than that realized had the trespass not occurred. The three appraisers testified that they were able, from appearance of the plants, to fairly accurately estimate what the loss had been. They thought Mrs. Guthrie had been damaged 100 crates, with definite loss of a profit of one dollar per crate.

The cause was tried long after marketing season. It was shown that when the crop matured prices had advanced to a point where a profit of three dollars per crate could have been had. Mrs. Guthrie testified that she realized that sum on the twenty-nine crates actually gathered. It cannot be said that the Court's finding on this issue was against the weight of evidence; and, in the light of *Brown* v. *Arkebauer,* 182 Ark. 354, 31 S. W. 2d 530, the loss was not speculative. Here, as in the Brown-Arkebauer case, the crop had developed to a stage permitting the witnesses to estimate, with a fair degree of

certainty, that the actual berries having a potential value were destroyed.

(d)    There was proof that stock other than that owned by Crumbley had been in the berry patch. Contention is that the Court disregarded damage caused by this intrusion. Since the appraisers' report, in point of time, followed the third visitation made by Crumbley's cattle, it must be assumed that the injury computed was caused by appellant's cattle. In any event it is not shown that the Court did not consider the evidence in that behalf offered by Crumbley.

(e)    Final objection is that the judgment is excessive. This appears to be based upon Mrs. Guthrie's three-fold increase in the amount demanded in her final answer, compared to the sum claimed when notice was sent Crumbley. If, as witnesses testified, prices increased between May and the marketing period, and this increase was sufficient to show that net profits would have been three dollars per crate instead of one dollar as originally estimated, it was proper to give effect to the *fact* of that increase, and to consider it in connection with other factors causing loss.

Affirmed.