SHOOP *v.* STATE.

4397                                         192 S. W. 2d 122

Opinion delivered January 28, 1946.

*Howell & Howell,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ROBINS, J. Noah Shoop has appealed from judgments in four cases wherein he was found guilty of selling intoxicating liquors in a county in which the sale of such liquors was prohibited under the provisions of Initiated Act No. 1, adopted November 3, 1942 (Acts 1943, p. 998). He was fined $500 for each offense. The trial court ordered that the defendant be confined in the Crawford county jail until the obligations were discharged. Two days later, and at the same term, a new judgment was entered, directing that Shoop ". . . be confined in the state penitentiary at hard labor until such time as the fine(s) and cost(s) be paid at the rate of $2 per day."

Reversal is sought, first, on the ground that evidence was insufficient. The record discloses testimony by James F. Dubberly, Sr., that he had repeatedly purchased liquor from Shoop; and, while he was not specific as to all dates, he did state positively that at least four separate purchases had been made from the defendant since the county by referendum banned the sale of intoxicants. Dubberly's credibility was for the jury and its finding that the sales were made will not be disturbed. Argument by appellant's counsel that there was no proof the sales, if in fact they were made, were consummated in "dry" territory, is answered by our familiar holding that trial courts may take judicial notice of local laws where the circumstances are such that knowledge will be presumed. *Skiles v. State,* 150 Ark. 300, 234 S. W. 721; *Crumbley v. Guthrie,* 207 Ark. 875, 183 S. W. 2d 47.

The second contention is that the municipal court for the city of Van Buren, where information was originally filed by the prosecuting attorney, was without jurisdiction because of limitations imposed by Art. 7, § 43, of the Constitution. It is there provided that corporation (or municipal) courts for towns and cities may be invested with jurisdiction concurrent with justices of the peace in civil and criminal matters, "and the General Assembly may invest such of them as it may deem expedient with jurisdiction of any criminal offenses not punishable by death or imprisonment in the penitentiary, with or without indictment, as may be provided by law. . . ."

Although on appeal to circuit court the charges against Shoop were consolidated, the jury was instructed that he was being tried for four separate offenses and that each one was a "first offense." Section 3 of Initiated Act No. 1 of 1942 (Acts 1943, p. 998, effective January 1, 1943) contains the provision that "It shall be unlawful for any person . . . to sell . . . liquor . . . in any county . . . in which the . . . sale . . . shall be prohibited. . . . Any person (who shall so sell any such liquor) . . . in any territory which has been made dry . . . shall, upon first conviction, be deemed guilty of a misdemeanor and shall be fined not less than $100 nor more than $1,000; for a second conviction, shall be fined not less than $200, nor more than $2,000; and for any subsequent conviction, shall be guilty of a felony and shall be sentenced to not less than one year nor more than five years in the state penitentiary. If any person so convicted be punished by a fine only, if such fine be not paid immediately, he shall be confined in the state penitentiary at hard labor until such fine and costs be paid at the rate of $2 per day."

Appellant's argument is that, although the offense with which he was charged is denominated in the statute as a misdemeanor, the part of the statute that authorizes confinement in the penitentiary on default of payment of fine controls and makes the offense a felony, and that, if the offense was a felony then, since the prosecution was begun in the municipal court which, under the con-

stitution, is invested with jurisdiction to try only misdemeanor cases, the circuit court on appeal would likewise be without jurisdiction.

On behalf of the state it is urged that the offense charged was only a misdemeanor and the fact that the law provided for confinement in the penitentiary until the fine was discharged at the rate of $2 per day did not change the grade of the offense from that of misdemeanor to that of felony.

This act declares that violation thereof (except in case of a third conviction) shall constitute a misdemeanor, punishable by a specified fine; but in the last sentence it is provided that, upon failure of the accused to pay the fine, he shall be confined in the penitentiary until the fine shall have been discharged at the rate of $2 per day.

By §§ 2922 and 2923, Pope's Digest, it is provided that offenses punishable by imprisonment in the penitentiary are felonies and that other offenses (which are those punishable by fine and/or jail sentences) are misdemeanors.

While there is authority for holding that the imprisonment authorized in event of non-payment of a fine is not a part of the punishment, but rather a means of enforcing collection of the fine, we conclude that whenever the ultimate effect of conviction of an offense may, in any case, be incarceration in the penitentiary such offense must be deemed to be a felony. "The maximum penalty that may be imposed or the things authorized to be done are the controlling characteristics in determining whether an offense is a felony or a misdemeanor." 22 C. J. S. 57.

Viewing the act in the light of this conclusion, there is an irreconcilable conflict in its provisions, because, in the first sentence of the paragraph dealing with punishment of violations, it is stated that first and second violations shall be misdemeanors, and in the final sentence of this paragraph it is provided that, if these violators (convicted of what has been declared to be a misde-

meanor) do not pay their fines, they are to be confined at hard labor in the penitentiary—a punishment reserved under the law for those found guilty of felonies.

In his work "On the Interpretation of Statutes" Sir Peter Benson Maxwell said: "Where the language of a statute, in its ordinary meaning . . . leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This may be done by departing from the rules of grammar, by giving an unusual meaning to particular words, by altering their collocation, by rejecting them altogether . . . under the influence, no doubt, of an irresistible conviction that the Legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language and really give the true meaning." Chap. IX, § 1, p. 198.

"It may be that two provisions are irreconcilable; if so, the one which expresses the intent of the law-makers should control." Section 166, p. 263, Crawford, "Statutory Construction."

While under the charge laid against appellant he was accused only of a misdemeanor, yet, under a literal construction of the act, if appellant is unable to pay the fines against him, aggregating $2,000, he must be confined in the penitentiary at hard labor for 1,000 days. There is no provision in the law for any distinction between prisoners received at the penitentiary—they are all presumably felons, and are treated as such by those in charge of the prison. Now by some refined process of reasoning it might be established that appellant, should he be put in the penitentiary for nonpayment of his fine, would not be a felon, and that there is a difference between one committed to the institution on conviction of felony and one sent there to discharge a fine by hard labor, it is doubtful if this distinction would be comprehended by the public generally, and certainly it would be difficult for a misdemeanant undergoing penal servitude along

with felons to appreciate this differentiation, however logical it might be in theory.

Treating the offense as a misdemeanor, as it is denominated by the act, justices of the peace have jurisdiction of trials therefor. So, if the act should be literally construed and enforced, a justice of the peace, on nonpayment of fine assessed by him for violation of the act, would be authorized to issue his *mittimus* committing the offender to the penitentiary—and this in the face of the constitutional provision limiting jurisdiction of the justices of the peace (except in examining proceedings) to misdemeanor cases. We cannot conceive that it was the intention of the framers of our constitutional or statutory law that a justice of the peace should, in any circumstances, have the power to commit offenders to the state penitentiary.

In interpreting a statute the guiding principle must always be the ascertainment of the intention of the lawmakers. The framers of this law declared that violation thereof should be a misdemeanor, and we conclude that this explicit declaration should control and nullify the last clause under which punishment reserved for felons might be imposed on persons already defined to be misdemeanants.

Next contention of appellant is that by the provisions of § 9903 of Pope's Digest the circuit court could not put appellant on trial until ten days after the date of the filing of the transcript of the municipal court. The statute does not expressly so limit the power of the circuit court. This section is as follows: "All appeals from municipal courts must be taken and the transcripts of appeal lodged in the office of the clerk of the circuit court within thirty days after judgment is rendered, and not thereafter. The circuit court shall advance on its docket such causes on appeal and the same shall stand for trial *de novo* in the circuit court ten days after being docketed."

We have uniformly held that the granting or refusing of a motion for continuance is largely within the discretion of the trial court and that the ruling thereon of

the trial court will not be disturbed in the absence of a showing that the discretion was abused. *Thompson* v. *State*, 26 Ark. 323; *Edmonds* v. *State*, 34 Ark. 720; *Shipley* v. *State*, 50 Ark. 49, 6 S. W. 226; *Jackson* v. *State*, 54 Ark. 243, 15 S. W. 607; *Harper* v. *State*, 79 Ark. 594, 96 S. W. 1003; *Walker* v. *State*, 91 Ark. 497, 121 S. W. 925; *Brockelhurst* v. *State*, 195 Ark. 67, 111 S. W. 2d 527; *Morris* v. *State*, 197 Ark. 778, 126 S. W. 2d 93; *French* v. *State*, 205 Ark. 386, 168 S. W. 829; *Pate* v. *State*, 206 Ark. 693, 177 S. W. 2d 933. A somewhat similar question was involved in the case of *Griffin* v. *State* (Ala.), 50 So. 962, in which it was held that a statute providing that the criminal docket should be taken up by the circuit court on Monday of the second week of court did not prevent a circuit court, in the exercise of its discretion, from setting a criminal case for trial during the first week.

We do not find anything in the record tending to show that the ruling of the lower court as to appellant's motion for a continuance was arbitrary or that any prejudice to appellant flowed therefrom.

The judgment of conviction in all four cases is affirmed, but modified so as to provide that collection of the fines may be enforced only by methods provided by law for collection of fines in misdemeanor cases.

GRIFFIN SMITH, Chief Justice, and Mr. Justice McFADDIN dissent as to modification.

McFADDIN, J. (dissenting). My dissent is from the modification. I hold that the circuit court judgment should be affirmed in all respects. Initiated Act No. 1 of 1942 was voted by the people at the general election; the Act provides that the first and second violations constitute misdemeanors and result in a fine. All of the appellant's violations in the case at bar were "first offenses," because he had not been convicted of any previous violations at the time he was tried and convicted in the case here. So, under the Act, the appellant was fined. Section 3 of the Initiated Act provides "if any person so convicted be punished by a fine only, if such fine be not paid immediately, he shall be confined in the state penitentiary at hard labor until such fine and costs

be paid at the rate of $2 per day." The majority opinion says that this act contains an "irreconcilable conflict in its provisions"; and then the majority proceeds to sub-stitute *confinement in the county jail* in lieu of *confinement in the state penitentiary*. I insist that the statute should be enforced as written.

In the attempt to demonstrate an "irreconcilable conflict," the majority reasoning is in successive steps about as follows: (1) the commitment to jail or penitentiary is a part of the punishment; (2) the commitment to the penitentiary makes the offense a felony, (3) first violations of the liquor act are misdemeanors; so (4) there can be no commitment to the penitentiary in default of payment of the fine. On these successive steps of reasoning, the majority is striking out of the statute the mandatory language directing the commitment to the penitentiary, and substituting in lieu thereof the majority-made legislation to the effect that the appellant should be committed to the county jail.

There are several answers to the majority's reasoning; one being, (a) that the distinction between felony and misdemeanor is of statutory origin only, and that the people by this initiated act could have changed the distinction between felony and misdemeanor; another being, (b) that the majority fails to give any effect to the holding of this court in *Burrell* v. *State,* 203 Ark. 1124, 160 S. W. 2d 218.

But rather than press either of these points, I prefer to go to the first step of reasoning advanced by the majority; that is, that the commitment is a part of the punishment. When I destroy that point, then all the other steps of reasoning in the majority opinion must necessarily fail. I contend (1) that the fine was the punishment; (2) the commitment was merely a means of collecting the fine; (3) the commitment is no part of the punishment.

This court, leading text-writers, and all the courts of last resort of the other states (so far as I have been able to ascertain) hold that the means of collecting a fine is

not a part of the punishment. The commitment, whether to the county jail or to the penitentiary, is not the punishment, but merely a means of collecting it. I cite and quote from some of these:

(1) Mr. Justice RIDDICK, in *ex parte* Brady, 70 Ark. 376, 68 S. W. 34, speaking for this court in 1902, said:

"It will be seen from these and other statutes that the imprisonment which follows the failure to pay the fine assessed by the court is not now a form of punishment substituted for the fine, but is a means adopted to compel the payment of the fine."

(2) In 15 Am. Juris. 184, in discussing "Commitment as a Part of Punishment," the rule is stated:

"Committing a prisoner to jail until a fine is paid is no part of the punishment. The penalty, or the punishment adjudged, is the fine, and the custody adjudged is the mode of executing the sentence, that is, of enforcing the payment of the fine. This is in accordance with the common law."

(3) In 25 C. J. 1157, in discussing imprisonment to collect a fine, the rule is stated:

"A direction in a sentence imposing a fine that defendant stand committed until the fine is paid is no part of the penalty for the offense, but is merely a means of compelling obedience to the judgment of the court. If he refuses to pay, he is not sentenced to a term in prison; the duration of his imprisonment is in his own control; by payment of the fine he can at any time secure his release. The sentence is not, therefore, open to the objection that the magistrate rendering it has no jurisdiction of offenses which are punishable by imprisonment."

(4) Likewise, in 36 C. J. S. 788, the rule is stated:

"Imprisonment of defendant until the fine is paid is no part of the penalty for the offense, but is merely a means of compelling obedience to the judgment of the court. If he refuses to pay, he is not sentenced to a term in prison; the duration of his imprisonment is in his own

control; by payment of the fine he can at any time secure his release. . . . The sentence is not, therefore, open to the objection that the magistrate rendering it has no jurisdiction of offenses which are punishable by imprisonment.''

(5) In 16 C. J. 1367, in discussing imprisonment for failure to pay a fine, the rule is stated:

''When a fine is imposed as a punishment, according to the weight of authority, it is within the common-law power of the court to direct that defendant stand committed until it is paid. In some jurisdictions, however, imprisonment in default of payment of fine is illegal, unless the court is authorized expressly by the legislature to impose it. The practice and authority for directing that one ordered to pay a fine stand committed until it is paid is now commonly authorized by statute. This is a proper means for the collection of a fine, and is not regarded as a part of the punishment. It is not, therefore, open to the objection that the magistrate has no jurisdiction of offenses which are punishable by imprisonment.''

(6) In 127 A. L. R. 1286, there is an annotation on the subject, ''Character as Felony or Misdemeanor of Offense for Which a Fine is Provided as Affected by Provision for Imprisonment Until Fine is Satisfied.'' That annotation is immediately following the reported case of *McKinney* v. *Hamilton,* 127 A. L. R. 1283, wherein the New York Court of Appeals reversed a holding of the Appellate Division. The opinion of the highest New York court was in accord with this dissent, and reversed the Appellate Division which had reached a conclusion similar to that reached by the majority in the case at bar.

(7) The courts of last resort in all the other states, so far as my search has disclosed, have reached the conclusion that the commitment is no part of the fine. Some of the cases so holding are: *In re* Newton, 39 Nebr. 757, 58 N. W. 436; *State* v. *Baxter,* 41 Kans. 516, 21 Pac. 650; *In re* MacDonald, 4 Wyo. 150, 33 Pac. 18; *Ex parte* Garrison, 193 Calif. 37, 223 Pac. 64; *Ex parte* Peacock, 25

Fla. 478, 6 So. 473. In 12 A. S. R. 202, immediately following the reported case of *Ex parte* Bryant, 24 Fla. 278, 4 So. 854, there is a splendid annotation on "Right to Imprison until Fine is Paid," which gives the English common-law cases on this point. In *Ex parte* Converse, 45 Nev. 93, 198 Pac. 229, the Supreme Court of Nevada, after quoting from 16 C. J. 1367 to the effect that the commitment is only a means for collecting the fine, and is not regarded as a part of the punishment, said:

"Of the courts which have had occasion to speak on this question, a great majority have reached the same conclusion that we have; the last to fall in line being that of Idaho. *State* v. *Goodrich,* 196 Pac. 1043. See, also, *ex parte* Londos, 54 Mont. 418, 170 Pac. 1045; *State* v. *Peterson,* 38 Minn. 143, 36 N. W. 443; *Ex parte* Dockery, 38 Tex. Cr. R. 293, 42 S. W. 599; *Irvin* v. *State,* 52 Fla. 51, 41 So. 785, 10 Ann. Cas. 1003; Bishop, New Crim. Proc., § 1301; *In re* Newton, 39 Neb. 757, 58 N. W. 436; *In re* Beall, 26 Ohio St. 195; *State* v. *Merry,* 20 N. D. 337, 127 N. W. 83."

I forego a citation of all the other cases on this point; but I trust I have listed enough authorities to establish that the commitment is not a part of the punishment. The appellant herein was fined for violating Initiated Act No. 1 of 1942. He made bail pending appeal. He could pay the fine, and be free. In default of paying the fine, I hold that he should be committed to the penitentiary just as the act clearly directs. I hold to this opinion, since the commitment is not a part of the punishment, but is merely a means of collecting it. The people, in adopting Initiated Act No. 1 of 1942, had a perfect right to provide that upon failure to pay the fine, the convicted person could be imprisoned in the state penitentiary. I submit that the action of the majority in modifying this statute is against the holdings in all the other states. From the modifying of the judgment of the circuit court, I respectfully dissent; and I am authorized to state that the Chief Justice joins in this dissent.