Adams v. Adams, Excx.

5-1320                                              310 S. W. 2d 813

Opinion delivered February 24, 1958.

[Rehearing denied March 31, 1958]

742

*Moses, McClellan & McDermott,* for appellant.

*Rose, Meek, House, Barron & Nash,* for appellee.

Ed. F. McFaddin, Associate Justice. This is an action for damages claimed to have been suffered by plaintiffs (appellants) because an obstruction which defendants (appellees) placed in a drainage ditch caused an overflow of waters onto plaintiffs' land. Equity jurisdiction was invoked to obtain a removal of the obstruction; and jurisdiction was retained to try the issues of (a) cause of the overflow, and (b) damages, if any, resulting therefrom. We will refer to the parties as they are styled in the Trial Court. After hearing the evidence the Chancery Court held that the overflow was caused by excessive rainfall and not because of the obstruction placed by defendants in the drainage ditch. Plaintiffs have appealed. We have two questions to consider.

I. *The Cause Of The Overflow.* Cypress Pocket Drainage Ditch was constructed in about 1927 and flows into the Arkansas River. In the fall of 1954 some of the defendants — with the acquiescence of the others — constructed a dam across the drainage ditch at a point on the defendants' lands; and the purpose of the dam was to impound water to be used in irrigation. The plaintiffs owned lands above the dam. On May 27, 1955 there was an enormous rainfall in the area drained by the ditch; and the result was an overflow of the plaintiffs' lands, rendering portions incapable of being cultivated in 1955. The defendants claimed that (a) the excessive rainfall and (b) the clogging of the outlet of the ditch were responsible for the overflow, rather than the dam constructed by defendants. Without prolonging this opinion to recite all of the evidence, it is sufficient to say that the dam was a substantial factor in causing the overflow of the plaintiffs' lands. It was shown that for some time after the rainfall the water level *above* the dam was higher than the water level below the dam; and that it was not until after a substantial portion of the dam had been removed[1] that the water subsided from plaintiffs' lands.

No permission was obtained by defendants from the Drainage District to construct the dam across the ditch. Section 21-565 Ark. Stats. makes it a misdemeanor for anyone to obstruct a drain. The unlawful act of obstruction may be considered on the matter of negligence. The torrential rainfall of May 27, 1955 was what is termed in law, "an act of God"; but the law is that when the negligence or tort of the defendants *concurs* with the act of God to cause damage to the plaintiff, then the defendant is liable for plaintiff's resulting damages. *St. L. S. W. RR. Co.* v. *Mackey,* 95 Ark. 297, 129 S. W. 78; *Manila School Dist.* v. *Sanders,* 226 Ark. 270, 289 S. W. 2d 529; *Lee* v. *Crittenden County,* 216 Ark. 480, 226 S. W. 2d 79. In the last cited case we said:

"The rule of law in this State is well settled by this court in *St. L. S. W. Ry. Co.* v. *Mackey,* 95 Ark.

---

[1] A portion of the dam was removed by the defendants, and complete removal was sought in this suit.

297, 129 S. W. 78. It was there said: 'If the injury was produced by the combined effect of the act of God and the concurring negligence of defendant, then it would be liable therefor. Where two concurring causes produce an injury which would not have resulted in the absence of either, the party responsible for either cause is liable for the consequent injury, and this rule applies where one of the causes is the act of God'."

So we conclude that the preponderance of the evidence shows that the defendants are liable to the plaintiffs for the damages resulting from the overflow.

II. *The Amount Of The Damages.* Here the plaintiffs run into considerable difficulty. The plaintiffs tried their case on the theory that the measure of damages to which they were entitled was what they would have produced on the overflowed land in 1955 if they had cultivated and harvested their crops in a good and proper manner; and the plaintiffs offered proof as to how much of each crop might have been produced from the land in 1955; what each crop would have brought; the expense of reconditioning the property, plowing, cultivating, harvesting, etc. This would have been the correct method of proving damages if the overflow had occurred after the time that the crops had reached a growth sufficient to have a value; but the plaintiffs' proof does not show that any of the crops had reached such a stage.

There were three crops listed in the plaintiffs' itemization of damages: cotton, oats, and beans. As regards the cotton crop, the plaintiff, Dorsey, admitted on cross examination that the cotton crop had not reached such a stage of development on May 27, 1955, as to have a market value. Here is his testimony: "Q. As of the time of the flood on May 27th, when the cotton was too immature — was so immature a cotton crop at that time — it would not have any market value? A. I never did sell any cotton in the field at that age. A. There is no market for cotton that young? A. No. Q. No question." There was no testimony to the contrary regarding the cotton crop. As regards the crop

of beans and oats, there is likewise no evidence that at the time of the overflow the crops had a market value, as distinct from the rental value of the land. In fact, as far as the bean crop is concerned, there is an inference to the contrary, because one of the defendants testified that he offered to give Dorsey enough bean seed to replant after the overflow.

The burden was on the plaintiffs to establish their damages. In *St. L. Ry.* v. *Saunders,* 85 Ark. 111, 107 S. W. 194, we said:

"There was evidence on behalf of appellee tending to prove the total destruction of his crops at a time when they were so young that they had no market value, and yet when it was too late in the season to replant, cultivate and mature crops of the kind usually produced on appellee's farm. The evidence tended to show that appellee by reason of the overflow was deprived entirely of the usable value of his land. That being the case, the court did not err in giving the above instruction on the measure of damages. The rental or usable value of the land was the proper criterion. 1 Sedgwick on Dam., § 184; *Chicago* v. *Huenerbein,* 85 Ill. 594. See *Willitts* v. *Chicago, Burlington & K. C. R. Co.,* 88 Iowa 281, 55 N. W. 313, 21 L. R. A. 608."

The foregoing rule has been recognized in our subsequent cases. See *Brown* v. *Arkebauer,* 182 Ark. 354, 31 S. W. 2d 630; *Faires* v. *Dupree,* 210 Ark. 797, 197 S. W. 2d 735; and *Farm Bureau Lbr. Corp.* v. *McMillan,* 211 Ark. 951, 203 S. W. 2d 398.

Thus the plaintiffs failed to show their damages by the correct measure of damages, but did show that the defendants were liable: so the plaintiffs are entitled to nominal damages. In *Barlow* v. *Lowder,* 35 Ark. 492, Chief Justice English said: ". . . some damages are always presumed to follow from the violation of any right; and therefore the law will in such cases award nominal damages if none greater be proved." See also *St. Louis, A. & T. Ry.* v. *Graham,* 55 Ark. 294, 18 S. W. 56. Therefore, the decree of the Chan-

cery Court is reversed and the cause is remanded, with directions to award the plaintiffs nominal damages of $10.00, which will carry with it all costs of all courts.

GEORGE ROSE SMITH, J., not participating.