DICKERSON CONSTRUCTION CO., INC. *v.*
John DOZIER

79-4                                      584 S.W. 2d 36

Opinion delivered July 9, 1979
(Division II)

*N. M. Norton,* for appellant.

*Daggett, Daggett & Van Dover,* for appellee.

JOHN A. FOGLEMAN, Justice. During the performance of a contract for highway repairs, the appellant, Dickerson Construction Company, Inc., constructed an earthen dam or "haul road" across a drainage ditch adjoining the appellee's property. The purpose of this "haul road" was to allow the appellant's equipment to traverse the ditch. During the period from Friday afternoon, July 8, 1977, to Sunday afternoon, July 10, 1977, a substantial rainfall occurred and this road acted as a dam, causing water to back up in the ditch, ultimately resulting in the inundation of approximately 190 acres of the appellee's land in varying depths. The water began receding Sunday afternoon, after the dam was cut, and receded totally sometime thereafter. There was a soybean crop on the flooded land. It had been planted approximately June 1, 1977 and had reached a state of growth described as "knee-high."

The appellee, John Dozier, filed suit against the appellant and sought to establish that the yield of his soybean crop had been significantly reduced by the flooding of the 190 acres, caused by the negligence of the appellant. The appellant's motion for a directed verdict at the conclusion of all the evidence was denied and the jury returned a verdict for the appellee in the amount of $11,500.00. The appellant's subsequent motions for a mistrial and for a new trial were

denied and this appeal followed.

The appellant alleges the following two points for reversal:

## I

THE JURY WAS IMPROPERLY INSTRUCTED AS TO THE MEASURE OF DAMAGES, AND APPELLANT'S MOTION FOR DIRECTED VERDICT SHOULD HAVE BEEN GRANTED BECAUSE OF FAILURE OF PLAINTIFF TO OFFER EVIDENCE ON WHICH THE PROPER MEASURE MIGHT BE BASED.

## II

THERE WAS MISCONDUCT OF THE JURY, IN THAT IN THE COURSE OF ITS DELIBERATIONS THE JURY MADE USE OF A POSTER, OR PLACARD, NOT ADMITTED IN EVIDENCE, PREPARED BY APPELLEE AND SETTING OUT APPELLEE'S THEORY OF DAMAGES.

The second point has merit and requires that the case be reversed and remanded for a new trial.

## I

Although not necessary for our disposition of this case, the issue of the measure of damages must be discussed, because the same question will almost certainly arise on retrial. Even though we are reversing the judgment on another point, we will treat them in the order they were stated, because the background pertains to both points. Appellee maintained records of the 1977 production of his farm and from those records sought to establish an average reduction in the bushels per acre production of the 190 acres which had been affected. One of these average reductions was based on a comparison to the production on the remainder of the farm as a whole, while the second was based on a comparison to the production achieved on a 55 acre bottomland

field, which the appellee testified was more fertile than hillside land and was the type of land most comparable to that flooded. By multiplying that result by the net price per bushel of soybeans (stipulated price of $5.50, less the $.10 per bushel hauling fee), the appellee arrived at the monetary damages allegedly suffered. Use of the 55 acre comparison resulted in damages of $15,708.06, while use of the other figure resulted in damages of $9,695.70. These computations were placed on charts by the appellee's attorneys, with the higher figure on chart 1 and the lower on chart 2. Although neither was introduced into evidence, chart 1 was used during direct examination of the appellee and during closing argument by the appellee's attorney.

At the close of all the evidence, the appellant moved for a directed verdict, alleging that the proper measure of damages was the rental value of the land that was affected and that, since there had been no evidence of such rental value, there was no basis for a recovery by the appellee. This motion was denied.

The appellant objected to the court's instruction on the measure of damages, contending that rental value of the land was the only proper measure of damages. The instruction read as follows:

> If you find for John Dozier on the question of liability against Dickerson Construction Company, you must then fix the amount of money which will reasonably and fairly compensate him for the following elements of damages sustained by him, if proximately caused by the negligence of the said Dickerson Construction Company. The difference in the fair market value between the crop that the land would otherwise have produced and the crop that was actually produced, less the difference between what it would have cost to have produced, harvested and marketed an undamaged crop and what it would cost to produce, harvest and market the actual crop. Whether these elements of damages have been proved by the evidence is for you to determine.

The appellant contends that the appellee's soybeans had

not reached a sufficient stage of growth to have a value and that in the absence of such proof, the correct measure of damages would be the rental value of the property, citing *Adams* v. *Adams,* 228 Ark. 741, 310 S.W. 2d 813.

The appellant places a great deal of reliance on the following testimony of J. O. Hill, the County Agent of Lee County, who had observed the acreage in question from the air on July 11, and who had made an inspection of the area on October 28, prior to harvesting:

> Q. What is the earliest date that beans are planted in Lee County, Mr. Hill?
> A. The earliest planting is the last week in April.
> Q. If you assume that the field was planted that early, would the crops have any market as of July 11th of the same year? Assuming its very earliest date.
> A. The only thing I can think of is as far as use is concerned is you could cut it for hay, but no beans at this point.
> Q. Even if you were to assume that it had maximum maturity, having been planted in the earliest period of time, April? It would have no market value on the date of this occurrence?
> A. Not as beans. By the same token it is too late to plant another crop.

We feel that the appellant's reliance on *Adams* v. *Adams,* supra, is misplaced because there was *no* evidence presented in that case that the crops involved had reached a stage of maturity sufficient either to have a market value or allow a reasonably certain estimate of the projected production. In light of testimony elicited from Mr. Hill during questioning by the appellee's attorney, we find this case to be distinguishable from *Adams.*

> Q. . . . but you have got your crop now in the middle of July and are you then in your opinion in a position to say well you have got a pretty good reasonable guess as to the production on it?
> A. Well, you would know whether or not you had a stand. You would know whether or not you had good weed control going for you and also you would know whether your beans were up to normal size or what

would be expected at this time, with a knee high type of a bean, and whether they were drought stressed and looking poor or whether you had a promising looking crop.

Q. In other words you have probably reached a stage where you could make a pretty good guess at it?

A. I think it would be within reason to state, you could say that things were either deteriorating and falling apart or you had something pretty good coming on.

\* \* \*

Q. Now, what I am trying to say is that this is based upon your experience, your judgment, exercising your judgment. Can you not and can not most any competent farmer in the middle of July reasonably estimate his production? I understand that things are going to vary and happen and so forth, but over a long period of time, based upon your experience you get a pretty good idea about what your production is going to be, don't you?

A. I think you are right.

In *Faires v. Dupree,* 210 Ark. 797, 197 S.W. 2d 735, although we found that the plaintiff was not entitled to an award for damages to crops because there was just a vague suggestion that financial loss had occurred and there was no evidence presented that the crop had even been planted, we said:

\* \* \* A rule is that where crops are so immature when destroyed as to have no market value, the measure of the damage is that for which the land would have rented. *St. L. I. M. & S. R. Co.* v. *Saunders,* 85 Ark. 111, 107 S.W. 194: *Brown* v. *Arkebauer,* 182 Ark. 354, 31 S.W. 2d 530; but if the crop has grown to a point where it can be said with reasonable certainty that a stated production would result, then damage is the value of such crop. *Crumbley* v. *Guthrie,* 207 Ark. 875, 183 S.W. 2d 47.

Although the testimony of Mr. Hill could be considered equivocal, we cannot say that there was no substantial evidence that the beans had reached a state where a reasonable estimate could be made of the expected produc-

tion. A close parallel can be drawn between the facts in this case and those present in *Crumbley* v. *Guthrie*, 207 Ark. 875, 183 S.W. 2d 47, cited in *Faires v. Dupree*, supra. In that case, cattle owned by the defendant had been permitted to run at large in the plaintiff's strawberry patch, resulting in a drastic decrease in expected yield. The damage to the strawberries occurred before the fruit had matured. We affirmed the award of damages, stating that "there is proof that sufficient progress had been made to promise a production much greater than that realized had the trespass not occurred," relying on testimony from appraisers that from the appearance of the plants they were able to make a fairly accurate estimate of what the actual loss had been.

The actual value of a crop at the time of its destruction is to be ascertained from consideration of the circumstances existing at the time of its destruction, as well as at any time before trial, favoring or rendering doubtful the conclusion that it would attain to a more valuable condition and from consideration of the hazards and expenses incident to the process of supposed growth or appreciation. *St. Louis, I.M. & S. Ry. Co.* v. *Hoshall*, 82 Ark. 387, 102 S.W. 207. The rule is the same as to a crop damaged, if the jury believes that otherwise it would have matured, except that the costs of gathering and marketing must also be deducted. *Missouri Pac. R. Co.* v. *Nichols*, 170 Ark. 1194, 279 S.W. 354. The jury is permitted to find the actual value of the crop at the time it was damaged by considering its probable value at maturity, less the difference between the cost of production based on a full or probable crop, and to deduct from such production the cost thereof. *W. B. Bynum Cooperage Co.* v. *Coulter*, 219 Ark. 818, 244 S.W. 2d 955. See AMI, Civil, 2225.

While the damages recoverable cannot exceed the actual value of the crops at the date of the injury to them, plus legal interest, the jury, in arriving at that value, should consider the probable value at maturity, if they believe from the evidence that the crops would have matured, but for the actions of defendant. *Railway Co.* v. *Lyman*, 57 Ark. 512, 22 S.W. 170; *Missouri Pac. R. Co.* v. *Nichols*, supra.

Whether the soybeans had matured sufficiently to have a market value or to be susceptible to a reasonable estimate of

the expected production at the time of the flooding of the appellee's land thus became a question for the jury and unless reasonable minds could not differ on the question, the trial judge did not err in refusing to grant the appellant's motion for a directed verdict. In the determination of whether there is substantial evidence to preclude the direction of a verdict, the judge must view the testimony and all reasonable inferences in the light most favorable to the party against whom the verdict is sought. *Wheeless* v. *Eudora Bank*, 256 Ark. 644, 509 S.W. 2d 532; *Huffman Wholesale Supply Co.* v. *Terry*, 240 Ark. 399, 399 S.W. 2d 658; *Page* v. *Boyd-Bilt, Inc.*, 246 Ark. 352, 438 S.W. 2d 307. When we view the evidence in the light most favorable to the appellee, and draw all reasonable inferences therefrom, we cannot say that the trial judge erred in denying the appellant's motion for a directed verdict at the conclusion of all the evidence.

Because the question of the maturity of the crop was for the jury, the appellant is correct in its contention that the binding instruction as to the measure of damages was erroneous. If the jury found that the crops were not sufficiently mature, then the measure of damages would be the rental value of the land. *Faires* v. *Dupree*, supra.

Appellant objected to the instruction given merely on the basis that the wrong measure of damages was stated and by offering an alternate instruction that damages would be limited to the rental value of the land overflowed. This instruction was as defective as the one given. Neither recognized that there was an issue of fact which controlled the measure of damages. If the jury had found that the crop had reached that level of maturity that would justify a finding that it could be said that a stated production would result, then the measure of damages would have been the difference in the value of the crop that would have been produced and that actually produced, taking into account any difference in the cost of production. If the jury found otherwise, then the measure of damages was the rental value of the land.

A proper objection to a jury instruction must specify a correct ground and give the trial judge an opportunity to instruct the jury properly, and an objection lacking sufficient specificity is not sufficient. *Baughman* v. *State*, 265 Ark. 869,

582 S.W. 2d 4 (1979). Since the alternate instruction offered was not a correct instruction, the objection was not sufficient to justify reversal.

## II

After the instructions were given, the jury retired to deliberate on the verdict. Sometime thereafter, a member of the jury requested of Deputy Sheriff Robert Guynes, who had taken the jury to the jury room, that he bring "the chart that was used with the beans" into the jury room. Guynes entered the courtroom, approached the appellee's attorneys, who were seated at the counsel table, and informed them of the juror's request. Guynes was given chart 1, containing the higher damage figures, which he delivered to the juror who had made the request. The jury returned its verdict approximately ten minutes later.

Neither the trial judge nor the appellant's attorneys were present when this transpired and they were not aware of either the request made by the juror or Deputy Guynes' actions. After learning what had occurred, the attorneys for the appellant moved for a mistrial. A hearing was held in which Deputy Guynes testified and the attorneys for both parties made statements. The motion was denied, the judge stating that he did not see any relation between the amount of damages on the chart and the verdict and that he felt it would have been proper to allow the jurors to enter the courtroom and observe the same figures displayed on a blackboard. A motion for a new trial on the same ground was also denied, after a hearing. It is conceded that all parties concerned acted in complete good faith. The trial judge stated that, in all probability, he would have granted a request by the jury for the chart.

Whether to allow the jury to have access to documents introduced into evidence, jury instructions or any other item or information, lies within the wide latitude of discretion vested in the trial judge. *Rose* v. *King,* 170 Ark. 209, 279 S.W. 373, *Dodwell* v. *Mound City Sawmill Co.,* 90 Ark. 287, 119 S.W. 262, and the action of the trial judge will not be overturned unless there has been a manifest abuse of that discretion. *Gardner* v. *State,* 263 Ark. 739, 569 S.W. 2d 74, and cases cited

therein. The trial judge is also vested with a considerable latitude of discretion in acting on a motion for mistrial or a motion for a new trial, and his exercise of that discretion will not be reversed in the absence of manifest abuse. *Henslee* v. *Kennedy,* 262 Ark. 198, 555 S.W. 2d 937; *General Motors Corp.* v. *Tate,* 257 Ark. 347, 516 S.W. 2d 602; *Security Ins. Co.* v. *Owen,* 255 Ark. 526, 501 S.W. 2d 229; *Back* v. *Duncan,* 246 Ark. 494, 438 S.W. 2d 690.

The procedure to be followed when a jury, which has retired for deliberation, requests additional information or clarification of some point is established by Ark. Stat. Ann. § 27-1734 (Repl. 1962). The statute reads:

> Further instruction. — After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of or after notice to the parties or their counsel.

An identical procedure to be followed in criminal trials has been held to be mandatory. Ark. Stat. Ann. § 43-2139 (Repl. 1977); *Williams* v. *State,* 264 Ark. 77, 568 S.W. 2d 30 (1978); *Golf* v. *State,* 261 Ark. 885, 552 S.W. 2d 326; *Jackson* v. *State,* 256 Ark. 406, 507 S.W. 2d 705. The considerations in those cases are just as relevant in this case. The appellant's attorneys had no opportunity to object to the jury receiving a chart which, in essence, summarized the appellee's closing argument relating to damages. There was no opportunity for the appellant's attorneys to request that an instruction be given which would limit the effect of the chart upon the jury's deliberation or remind the jury that the chart was not evidence. The fact that the chart had not been admitted into evidence is itself of no small significance. Ark. Stat. Ann. § 43-2138 (Repl. 1977) provides: "[u]pon retiring for deliberation, the jury may take with them all papers which have been received as evidence in the cause." We decline, however, to hold that allowing the jury to have access to something which has not been admitted into evidence will necessarily, without more, constitute an abuse of discretion. Other jurisdictions prohibit the jury access to anything which has not been in-

troduced into evidence. See *Lyon* v. *Bush*, 49 Hawaii 116, 412 P. 662 (1966); *Keeney* v. *Commonwealth*, 345 S.W. 2d 481 (Ky., 1961); *Newburgh Urban Renewal Agency* v. *Williams*, 79 Misc. 2d 991, 361 N.Y.S. 2d 842 (1974); *Gertz* v. *Bass*, 59 Ill. App. 2d 180, 208 N.E. 2d 113 (1965). Although the amount of time spent in deliberations is not in and of itself indicative of possible prejudice or lack of fair trial, the fact that the jury returned its verdict only ten minutes after receiving the chart, is a factor to consider in a determination of whether the appellant's cause may have been prejudiced.

Although it dealt with a criminal trial in which the jury foreman asked the bailiff if the fact that one of the jurors was acquainted with the primary prosecution witness would have any bearing on the deliberations of the jury, some of the language in *Williams* v. *State*, supra, is particularly pertinent to this case:

> It has been held that failure to comply with such mandatory provision is prejudicial as a matter of law unless it is shown that no prejudice resulted or could have resulted from the non-compliance. . . It has also been held that lack of prejudice must be shown by clear and convincing evidence and that any doubt on the issue must be resolved in favor of the accused. . .

> To begin with, we presume that any error is prejudicial unless we can say with confidence that it is not. . . One reason for placing such a heavy burden upon the state is the necessity for preserving the sanctity of the jury deliberations. . . . Another is because the conduct of the court officials in performing their duties and following the procedures prescribed for them should be such as to leave no possible suspicion of acting either prejudicially or favorably to an accused. . .

> The most difficult question is that of prejudice. We cannot say that lack of prejudice is manifest. The state actually concedes that it had the burden of proving that there was no prejudice. . . If the matter had been called to the attention of the trial court, the judge could have cautioned the jury that it must confine its consideration of the case to the evidence before it, disregarding any

knowledge or information from any other source, save common knowledge. . . . [Citations omitted.]

In light of the facts of this case as set out in this opinion, we cannot say that the lack of prejudice to the appellant was manifest, because appellant had no opportunity to object or to ask the court to give the jury a cautionary instruction. Because of this, we find that the trial judge abused his discretion in denying the appellant's motions for a mistrial and a new trial.

The judgment is reversed and the cause remanded for a new trial.

We agree. HARRIS, C.J., HOLT and PURTLE, JJ.