NIEMEYER *v.* LEE AND CENTRAL SOYA COMPANY, INC.

[No. 1267A107. Filed March 4, 1969. No Petition for Rehearing Filed.]

*B. Michael McCormick,* Esq., *Morris B. Blumberg,* Esq., *Ernest M. Wright,* Esq., Terre Haute, and *Clellant J. Henner,* Esq., Rockville, for appellant.

*John B. McFaddin,* Esq., Rockville, and *Dix, Dix, Patrick, Ratcliffe & Adamson,* Terre Haute, for appellees.

WHITE, J.—Appellant, (plaintiff) was riding in the rear seat of an automobile when it was struck in the rear by a truck being driven in the same direction by appellee Lee for appellee Central Soya Company, Inc. Appellant brought suit against appellees to recover damages for a whip-lash injury she alleged was sustained in the accident. A jury trial resulted in a verdict reading:

> "We, the Jury, find in favor of the plaintiff, Jenny Niemeyer, and against the defendants, Thomas W. Lee and Central Soya Company, Inc., and assess the plaintiff's damages in the sum of $ *None*."

Judgment was rendered accordingly and appellant's motion for new trial was overruled. This appeal raises the question of whether the verdict was so ambiguous as to be contrary to law thus entitling appellant to a new trial. Also, the question is raised whether the uncontroverted evidence proved "some damages" thereby entitling the appellant to a new trial because she was "awarded substantially less recovery than the facts in evidence show her actual injuries and damages to be":

We find that both these questions must be answered negatively. The instructions to the jury, appellant's memorandum to her motion for new trial, and the holding in *Schutz v. Rose* (1964), 136 Ind. App. 165, 196 N. E. 2d 285, involving a similar verdict, all lead to the conclusion that the jury's verdict means that appellees-defendants were legally responsible for whatever damages proximately resulted from the accident, but that appellant sustained no damage, and, further, that the verdict was so understood by all concerned.

We also find that the medical evidence most favorable to appellees does controvert all the lay and medical evidence to the effect that the symptoms of which appellants complained (and which may be conceded, *arguendo*, do actually exist) were the result of the accident. Therefore, we affirm.

And having so said we would fain move on to the resolution of other problems. But the statutes, as interpreted in *Hunter v. Cleveland, C., C. & St. L. R. Co.* (1930), 202 Ind. 328, 334, 174 N. E. 287, entitle the parties to "a statement in writing of each question arising in the record . . . and the decision of the court thereon".

The grounds of the motion for new trial, the overruling of which is the only assigned error, are as follows:

"1. Irregularity in the proceedings of the court by which plaintiff was prevented from having a fair trial in this, to wit:

(a) The court erred in that after the *fury* [sic] retired to deliberate upon its verdict, and then later returned into court a verdict and find for plaintiff, without assessing any damages, received said improper verdict under the issues and evidence, and then after receiving said verdict in favor of plaintiff, rendered a judgment on said verdict in favor of defendants.

"2. The damages assessed are inadequate.

"3. Plaintiff was entitled to recovery by her complaint, and did so recover by the jury returning a verdict in favor of plaintiff on her complaint, but awarded substantially less recovery than the facts in evidence show her actual injuries and damages to be.

"4. Error in the assessment of the amount of recovery, in this, that the amount is too small.

"5. The verdict of the jury is not sustained by sufficient evidence.

"6. The verdict of the jury is contrary to law.

"7. The court erred in accepting an improper verdict from the jury, which found in favor of plaintiff on the question of liability, without assessing any damages for injuries received, when the undisputed evidence established that plaintiff received permanent injuries as a proximate result of said collision.

"8. The court erred in sustaining defendant's motion for judgment on verdict, which said verdict was in fact in favor of plaintiff on her complaint and against defendants.

"9. Error of law occurring at the trial as follows: The Court erred in giving to the jury at the request of defendants, their tendered instructions numbered 1, 4 and 6 separately and severally considered and to the giving of said instructions, plaintiff, Jenny Niemeyer, duly objected within the proper time and made specific objections to each of said instructions, which specific objections were directed to and taken by the Court Reporter after the court had indicated the instructions it would give to the jury and before oral arguments to the jury, said specific objections thereto dictated and taken by the court reporter are a part of the record therein by a special bill of exceptions under and pursuant to Rule 1-7 of the Rules of the Supreme Court of Indiana."

Appellant's counsel have argued the first eight of these grounds in the following three group headings. Pursuant to Supreme Court Rule No. 2-17(i), the alleged error specified in ground No. 9 has been waived by appellant's failure to discuss it.

"C. THE DAMAGES ASSESSED ARE INADEQUATE". Grounds 1, 2, 3, and 4 are discussed under this heading following the assertion that "[t]he question of inadequate damages bears on all . . . three . . . and . . . [they] are supported by one argument". The essence of that argument seems to be that negligence, proximate cause, freedom from contributory negligence and injury were all established by the evidence most favorable to appellee. Therefore, "[b]ased upon the uncontroverted evidence, as well as that evidence most favorable to Appellees, Appellant contends that, at first blush, the inadequate verdict was motivated by prejudice, passion, or partiality *and* that a flagrant injustice has been done to her".

"D. THE VERDICT OF THE JURY IS CONTRARY TO LAW". Under this caption grounds 1, 6, 7 and 8 are grouped and argued as one. The argument here made is that the verdict conferred no authority on the trial court to enter judgment on it. It is further asserted that: "An ambiguous verdict, as the one in this case, is contrary to law in Indiana."

"E. THE VERDICT IS NOT SUSTAINED BY SUFFICIENT EVIDENCE AND CONTRARY TO LAW". Grounds 5 and 6 are combined for argument under this heading. The argument that the verdict is contrary to law because it is "not sustained by sufficient evidence" is difficult to follow, especially in light of counsels' acknowledgment of the authority of *Thompson v. Town of Ft. Branch* (1931), 204 Ind. 152, 156, 178 N. E. 440, holding that: "It is well settled in Indiana that an assignment as cause for a new trial, that the verdict or finding is not sustained by the evidence, or is contrary to law, presents no question to this Court as to the amount of damages." The argument seems to be, however, a reiteration of the argument under Caption C that the damages are inadequate, combined with the reassertion of the ambiguity argument made under Caption D as a prelude to quoting the rule of *Paxson v. Dean* (1903), 31 Ind. App. 46, 49, 67 N. E. 112, to the effect that a jury which finds for a plaintiff has no right to disregard undisputed evidence in fixing the amount of the damages awarded.

We believe it a fair appraisal of appellant's whole argument to say that its essence is an attempt to sustain two propositions, and only two propositions, which are:

1. "Plaintiff was entitled to recovery by her complaint, and did so recover by the jury returning a verdict in favor of plaintiff on her complaint, but [was] awarded substantially less recovery than the facts in evidence show her actual injuries and damages to be." (This was appellant's ground No. 3 of her new trial motion.)

2. "The verdict of the jury is contrary to law" (which is her ground No. 6) because it is ambiguous and is not supported by the evidence.

Considering those propositions in inverse order, Supreme Court Rule 1-14B, effective March 1, 1967, requires a memorandum to be filed with any motion for new trial which is based on the grounds that the verdict is not sustained by sufficient evidence or is contrary to law, stating specifically wherein the evidence is insuffi-

cient or the verdict contrary to law. Grounds not so specified must be deemed waived. *Anderson v. Irwin* (1968), 142 Ind. App. 302, 234 N. E. 2d 276, 13 Ind. Dec. 266. Since neither the memorandum nor its substance is included in the brief, the easy disposition would be to hold that such omission constitutes a waiver of the contention that the verdict is ambiguous or insufficiently supported by the evidence. *West v. Ind. Ins. Co.* (1968), 143 Ind. App. 298, 240 N. E. 2d 86, 15 Ind. Dec. 336. Rule 2-17(f), however, casts some doubt on our power to question the sufficiency of the appellant's summary statement of the record when the appellees have not cured deficiencies by making necessary additions in their brief.[1] Therefore we have searched the record and find that in the memorandum insufficiency of the evidence is argued at length but ambiguity of the verdict is never mentioned. On the contrary, in support of both her ground No. 5 (that the verdict is not sustained by sufficient evidence) and her ground No. 6 (that the verdict is contrary to law) appellees' counsel, in their memorandum, appear to understand and treat that part of the verdict which finds in favor of the appellant as a finding that appellees were negligent, and that part assessing damages in the sum of none dollars as the jury's finding of no injury in deliberate and illegal rejection of uncontroverted evidence.

We note that appellant's instruction No. 10, which was given, "instructs you [the jury] that if you find that the plaintiff, Jenny Niemeyer, should recover in this action, then it is your duty to fix the amount of damages as shown by a preponderance of the evidence relevant thereto, *if any.*" (Emphasis added.) The instruction then continues: "In fixing the amount of such damages, *if any,* you may take into consideration the extent of her injuries, if any . . . ." (Emphasis added.) The remainder of the instruction details other

---

1. In pertinent part Rule 2-17(f) commands: "A summary statement of the record . . . in the brief *shall* be taken to be accurate and *sufficient* for a full understanding of the questions presented for a decision *unless* the opposite party in his brief shall make the necessary . . . additions. . . ." (Emphasis added.)

possible elements of damage for the jury's consideration, each such element being followed by the "if any" condition (or "if you find it to be a fact") and concludes, "and after considering such elements, *if any have been proved by a preponderance of the evidence,* you should give the plaintiff such a sum . . ." etc. (Emphasis added.) This instruction reasonably could have been interpreted by the jury as saying to it that it had a right to find that plaintiff was not damaged, even though it also found for the plaintiff because it was of the opinion that defendants negligently caused the accident.

It would therefore appear that the somewhat uncommon form of the verdict in this case could very well have resulted from the jury trying to follow plaintiff's instruction No. 10.[2] This verdict is not rendered ambiguous by the mere fact that it is not worded as a judge or a more sophisticated jury finding liability without damage would have worded it.

Any discussion of whether the verdict was contrary to law because the finding of no damages was not supported by the evidence[3] or whether the verdict, the evidence, and the law compel this court to hold that "plaintiff was entitled to recovery and did so recover . . . but, [was] awarded substantially less recovery than the facts in evidence show her actual injuries and damages to be", requires a summation of the facts pertinent thereto as the jury might have

---

2. In thus interpreting the verdict in terms of appellant's instruction No. 10 (which duplicates plaintiff's instruction No. 9 with only the plaintiff's name changed from "Jenny Niemeyer" to "Margaret Tiffin" and is substantially repeated in Nos. 11 and 12) we are not unmindful of appellees' instruction No. 6 which included this sentence: "If you find that . . . [appellees'] negligence, if any, was not a proximate cause of the injuries, if any, sustained by plaintiffs, then, plaintiffs cannot recover in this action and your verdict should be for defendants." To this same effect was the court's instruction No. 17.

3. So far as damages are concerned this is a negative verdict and want of sufficient evidence is not an available ground on which to attack such a verdict. *State Farm Life Ins. Co. v. Spidel,* 246 Ind. 458, 460, 202 N. E. 2d 886 (1964). We understand appellant to be saying (by asserting insufficiency of the evidence) that the record is devoid of evidence to contradict her evidence to the effect that she was injured by the accident.

found them from the uncontroverted evidence and the controverted evidence most favorable to appellees.

Since responsibility for causing the accident is not here a question, the manner in which the collision occurred is pertinent only to the extent that it may bear on the question of whether plaintiff was thereby injured.

At the time of the accident the appellant, then aged 52, was riding on the rear seat on the right side of an automobile being driven by her husband. Her friend, a Mrs. Tiffin,[4] was riding to her left and Mrs. Tiffin's husband was riding to the right of the driver. As the car stopped, or was stopping (because of the stopping of a car immediately ahead of it in a line of traffic), it was struck in the rear by appellees' truck traveling in the same direction. Both the back-end and the front-end of the appellant's automobile were damaged to the extent that the automobile was considered irreparable and was sold for salvage.

The front seat was torn loose and it and the two men were thrown into the back seat area, while the two women were thrown forward. Neither man appears ever to have complained of injury. The two women left the automobile through the left front door after appellant's husband kicked it open. He may have given the women some assistance in getting out of the automobile, but both were completely ambulatory at all times. They sat on the front porch of a nearby house during the investigation which followed the collision. They complained to the investigating police officer and to the lady of the house of neck and back pains, but declined offers to call a doctor or an ambulance and of transportation to the

---

4. Mrs. Tiffin also brought suit against appellees for alleged whiplash injuries. The two cases were consolidated for trial and resulted in identical verdicts. The trial court sustained Mrs. Tiffin's motion for new trial and no appeal was taken. Appellees' counsel seem to agree that appellant's counsel have succeeded in separating the two cases in their statement of the record and the evidence, but appellees' counsel do urge the trial court's different treatment of the two motions for new trial as a reason for affirmance. We do not so consider it and have not considered the *Tiffin* case in any way in the conclusions we have reached in this, the *Niemeyer*, appeal.

hospital emergency room in the patrol car. They also declined offers of a place to lie down while waiting but did accept aspirins. The lady testified that they "seemed to be pretty shook up". The accident happened in Vincennes, Indiana, on August 4, 1965 (some twenty-two months prior to the trial) at about 9:50 A.M. The plaintiff's party had left Terre Haute at about 7:00 that morning bound for Evansville intending to spend a few days there on business and for pleasure. After the accident a substitute automobile was brought from Terre Haute and the two couples continued on to Evansville where they stayed all night and returned to their Terre Haute and West Terre Haute homes the next day. At Evansville they did not see a doctor or seek medical, osteopathic, or chiropratic attention, but the ladies did go to a beauty shop in their hotel where they had hot towels applied to their necks. They did not leave the hotel until they commenced their return trip.

On her return to her home near West Terre Haute, about 5:00 P.M. on the day following the accident, the appellant did not obtain medical, osteopathic, or chiropratic attention that day, but did see Dr. D. M. Ferguson, a Terre Haute osteopath, on the day following and saw him at least once a week thereafter for some ten months. She also saw Terre Haute medical doctors, Ezra R. Haslem, William W. Kreible and Paul Siebenmorgan, as well as Dr. Joseph Noah of St. Louis, Missouri, and a Dr. Nichols of Phoenix, Arizona.

The only evidence concerning all these doctors is the testimony of the plaintiff and her husband. None of these doctors testified at the trial, either in person or by deposition. No attempt was made to introduce any doctor's report or doctor's bill. No attempt was made (in the evidence) to explain why no such evidence was offered.[5]

---

5. There was evidence that Dr. Haslem had a cardio-vascular condition and had retired, but no evidence that he could not have attended the trial or that he could not have testified at the trial or by deposition. Appellees' brief points out that only two of eight doctors who saw appellant testified at the trial. Appellant's reply brief counters with the statement that the expense of bringing in all the doctors "in a case of this size" is prohibitive and that appellees could have subpoenaed or

Furthermore, there was no instruction given, or tendered, telling the jury of plaintiff's privilege with respect to her doctor's testimony and that no inference adverse to her case could be drawn from her failure to make such testimony available to the jury.[6] Absent such instruction and tender, therefore, it would seem that we would be forced to assume that the jury legally could have indulged a common sense presumption applicable to nonprivileged witnesses that the testimony of the uncalled physicians would have been unfavorable to appellant.

The medical evidence adduced at the trial was given by Dr. Vincente Sisson, who examined plaintiff by court order on April 11, 1967, approximately twenty months after the accident and two months before the trial, and by Dr. Donn R. Gossom, who examined her on May 9, 1967, which was approximately twenty-one months after the accident and one month before the trial.

Dr. Sisson's testimony could have been understood by the jury as meaning that the plaintiff had no objective symptoms of trauma to account for her complaints of pain and suffering whereby her complaints could be causally connected with the accident. While he did testify in answer to a hypothetical question that "[a]ssuming, that . . . [appellant] prior to . . . [the accident] was a healthy robust woman, she had no problem in turning her head either to the right or to the left, that she did not have any pains radiating in from the cervical region, that she did not have any evidence of numbness in the left arm, and that ever since August . . . [the accident] she now has these complaints, . . . [it is] reasonable to assume, based on medical certainty, that the accident is the result of the woman's present physical condition".[7] But he

deposed them. Nothing indicates whether their absence was commented on in argument to the jury.

6. See *Rump v. Woods* (1912), 50 Ind. App. 347, 98 N. E. 369; Anno. 131 A. L. R. 693, 699-700.

7. Appellant paraphrases the last clause in his summary statement of the evidence thusly: "that the accident in question resulted in this woman's present physical condition." We have no doubt that it was so understood by the witness and the jury.

did not testify that she was a healthy robust woman, etc., before the accident or that she actually had the symptoms of which she complained after the accident.[8] And he did not say that he would believe that her complaints were the result of the injury even if he did make the assumptions suggested. He merely said that it would be reasonable so to assume. On the contrary, he testified that at the time he examined her he did not find that she had any injury at that time; that he did not find any physical evidence that would make him conclude that she had any permanent disability; and testified in the negative as to whether he found several specifically named objective symptoms of injury.

To the extent that the lay testimony and the expert testimony of the other physician could be interpreted as supporting the conclusion that the accident caused plaintiff to have some or all of the pains and symptoms of which she complained, all such testimony can reasonably be said to have been contradicted by Dr. Sisson's testimony.[9] This, of course, does not mean to say that he, at any time, flatly stated that the accident did not cause injury to plaintiff, but the obvious conclusion, if one is convinced by his testimony, is that the causal connection between the accident and plaintiff's subjective symptoms is not proven. And the fact that he did not doubt the sincerity of plaintiff's complaints or of the other doctor's testimony concerning objective evidence of muscle spasm in no way weakens his obvious disagreement with their conclusions as to causality.

8. He did say that he had no reason to disbelieve her.
9. If it be conceded that the evidence is undisputed that appellant was momentarily shaken up in the accident (as distinguished from the symptoms of which she complained) and so appeared to the lady at whose house they waited until another automobile was available, nevertheless, without prejudice or passion motivating them, the members of the jury could have found that the damages resulting from such shaking-up were so infinitesimal as to be incapable of pecuniary evaluation. Without intending to suggest that nominal damages are or are not recoverable (22 Am. Jur. 2d 23, Damages §8; *Adams v. Adams*, 228 Ark. 741, 310 S. W. 2d 813) in personal injury negligence actions, we do, however, approve this holding in *Green v. Macy* (1905), 36 Ind. App. 560, 566, 76 N. E. 264: "Even if it be conceded that appellant was entitled to nominal damages, we can not reverse the case for failure to assess such damages".

Appellant's counsel concede that there is contradictory medical testimony as to the permanency of the injury but contend that there is no dispute whatever as to the existence of "some injury". The contradictory medical testimony as to permanency was that of Dr. Sisson and it is obvious from his testimony that he found no evidence of permanency because he found no injury on the day of the examination. Yet all the so-called undisputed evidence of "some injury" was evidence that appellant had on the day of the accident and continuously thereafter essentially the same symptoms she had on the day of the examination. (If there was any difference, it was that the symptoms had grown in number and severity.) Therefore, if Dr. Sisson's testimony negated injury on the day of the examination, it negated injury on the day of the accident and on the days intervening.

Whatever, then, may be the rule with regard to undisputed evidence of "some injury" is immaterial here. This is not such a case.

Counsel have argued over the applicability of *Schutz v. Rose* (1964), 136 Ind. App. 165, 196 N. E. 2d 285, as a ruling precedent in this case. There the jury returned the following verdict (136 Ind. App. at 167) :

> "We, the Jury, find for the plaintiff as against the defendant and fix the amount of his damages upon Paragraph I of this complaint for property damage at $500.00, and fix the amount of his damages upon Paragraph II of his complaint for personal injuries at $ *none*."

After stating the rule by which verdicts are to be tested when attacked on the ground that the plaintiff "is awarded substantially less recovery than the facts in evidence show his actual pecuniary loss to be", the opinion in that case, written by Judge Hunter, states (136 Ind. App. at 170) :

> "Upon close scrutiny of the record, and the brief filed by the appellant, this court is unable to find evidence of such prejudice, passion, partiality or corruption of the jury

which would justify this court in invading the province of the jury by reconsidering the award of damages which they jury made. *In addition,* the award does not seem to be contrary to the evidence presented, inasmuch as medical testimony was admitted by which the jury could reasonably infer that the injuries complained of by the plaintiff appellant were not sustained in the collision, but were merely developments associated with old age or a prior occurrence, etc." (Emphasis added.)

Appellant says: "The evidence in the case at bar speaks in no way of such alternative possibilities."

We do not read *Schutz* as relying primarily on "alternative possibilities". It relies on the want of "evidence of such prejudice, passion, partiality or corruption of the jury as would justify this court in invading the province of the jury". And in addition, upon the fact that "the award does not seem to be contrary to the evidence presented."

We have already pointed out wherein the award of "None" damages in this case was not contrary to the medical evidence most favorable to appellees. It was apparently on the basis of that evidence that the jury found that appellant had failed to sustain her burden of proving she was damaged as a proximate result of the accident. The burden was on appellant to prove by a preponderance of the evidence that the accident was the proximate cause of her symptoms. Appellees had no burden of proving the possibility that something else could have caused the symptoms.

Counsel have also argued whether certain facts in evidence make it apparent that in assessing appellant's damages as "None" the jury was motivated by prejudice and partiality. Appellant urges that the fact that she and her husband were people of some means and were intending to attend horse races during their stay in Evansville could have prejudiced the jury against her, but concedes that she does not know what was in the jury's minds. Appellee counters with the suggestion that the manner in which evidence of appellant's somewhat affluent standard of living

and of the purpose of the Evansville trip came to be a part of the testimony during the trial, along with other alleged inconsistencies, could legitimately have weakened, in the minds of the jury, the credibility of plaintiff and husband as witnesses in their own behalf. As appellees point out, it is not within our province to judge the credibility of any witness or to weigh the evidence. *Hinds v. McNair* (1955), 235 Ind. 34, 54, 129 N. E. 2d 553. And we are convinced that it would be even further beyond our competence to attempt to guess how the jury weighed it or what pertinent facts they believed had been proven by a preponderance of the evidence. We believe, however, that what has already been said demonstrates that the jury could have concluded, on the basis of the medical evidence most favorable to appellees, that appellant was not injured in the accident. And further, this conclusion could have been reached without doubting appellant's sincerity. Only her lay opinion that her symptoms were caused by the accident need have been doubted. And Dr. Sisson's testimony, unaided by any passion or prejudice or partiality, is adequate justification for such doubt. Thus, appellant's argument, at best, shows only a possibility that the jury acted on improper motivation in finding that appellant suffered no damages in the accident. The possibility that it acted on proper motives is at least as great. This falls far short of measuring up to appellant's contention that, "[b]ased on the uncontroverted evidence, as well as the verdict most favorable to Appellees, . . . at first blush, the inadequate verdict was motivated by prejudice, passion or partiality *and* that a flagrant injustice has been done to her".

Judgment affirmed. Pursuant to Ind. Acts 1881 (Spec. Sess.) Ch. 38, § 652, being Burns' Ind. Stat. Ann. § 2-3237, the appellees shall recover costs.

It is so ordered.

Pfaff, C.J., Hoffman and Sharp, J.J., concur.

NOTE.—Reported in 245 N. E. 2d 178.