DAVID J. GALBRAITH *v.* MARC D. LEININGER
AND TED L. LEININGER.

[No. 3-873A97. Filed April 29, 1975.]

*C. David Peebles, Peters, Peebles & Terrill,* of Fort Wayne, for appellant.

*William F. McNagny, Barrett, Barrett & McNagny,* of Fort Wayne, for appellees.

GARRARD, J.—David Galbraith brought suit for personal injuries and property damage arising out of an automobile collision.

In the pretrial order, which was approved by the parties, the defendants admitted negligence and stipulated the $625 property damage to Galbraith's vehicle and the $60 expended by Galbraith for the services of his physician.

The case was then tried to a jury upon the issue of what other damages, if any, were suffered by Galbraith as a result of the collision.

At the conclusion of the trial the court, without objection, instructed the jury as follows:

> "If you find that despite defendant's negligence, such negligence was not a proximate cause of the injuries which the plaintiff claims, then your verdict must [be] limited to the damages stipulated in the amount of $625.00 for plaintiff's car and medical expenses in the amount of $60.00."

Thereafter, the jury returned a verdict for plaintiff in the amount of $685, and judgment was entered on the verdict.

On appeal Galbraith asserts that the verdict was inadequate.

It should be noted at the outset that this case does not present a "pure" claim of the inconsistency involved in a finding for the plaintiff followed by an asserted flagrant injustice in the amount of damages awarded. Under the issues as framed by the parties and tried to the jury, liability for $680 was postulated. The burden of proof was upon Galbraith to establish the damages proximately caused by the collision. Upon the only issues presented for trial, the plaintiff received a negative verdict.

The standard for review, then, is whether the evidence favorable to the verdict leads to only one reasonable con-

clusion, and that conclusion is contrary to the one reached by the jury. *Houser* v. *Bd. of Comm.* (1969), 252 Ind. 312, 247 N.E.2d 675.

Indeed, on the factual circumstances involved, this appears to be the standard employed in other decisions considering alleged insufficiency of the verdict. See, *Niemeyer* v. *Lee* (1969), 144 Ind. App. 161, 245 N.E.2d 178; *Stinson* v. *Mettert* (1967), 141 Ind. App. 354, 228 N.E.2d 43; *Schutz* v. *Rose* (1964), 136 Ind. App. 165, 196 N.E.2d 285.

We have reviewed the entire trial record and are satisfied that the jury might reasonably have concluded that Galbraith failed to sustain his burden of proof on damages other than those stipulated.

Evidence on whether there was damage to his business was conflicting, and we may not substitute our judgment for that of the jury.

Regarding his claim of permanent impairment, Galbraith points to the evidence of the two physicians who testified at trial.

Dr. Gordon Franke, the attending physician, testified that upon examination three days after the collision, Galbraith had "a low back strain or contusion" as a consequence of the crash. He also testified that it was his opinion at the time of trial (approximately 3½ years after the collision) that Galbraith had a permanent partial impairment of 19%.

Dr. Paul Reszel, who examined Galbraith on behalf of the defendants, testified that he examined Galbraith one time some seventeen months after the collision. His examination revealed some evidence of spinal degeneration in the form of arthritic spurring. He stated an opinion that, when examined, Galbraith had a 15% impairment and that he had no way of knowing whether that impairment continued to exist.

Neither physician testified that the asserted impairment either came from or could have been caused by the injuries received in the collision. Neither explained how he arrived at his figure or what loss of functions was involved.

It was the testimony of Galbraith that attributed the impairment to the collision.

However, his credibility was attacked by the defendants. Marc Leininger testified that two days after the collision Galbraith called him about the collision and the damage to Galbraith's auto. He stated that during the conversation, Galbraith confirmed that he had not been hurt.

The evidence disclosed that Galbraith's total medical bill for the three and one half years following the accident was the sixty dollars that had been stipulated.

Galbraith was cross examined on the basis of a work record he kept. While he testified that the references to work referred to his crew rather than to him personally, the jury might have inferred otherwise.

It would be necessary to set out the entire examination to fully demonstrate the basis for our conclusion that the jury might permissibly have chosen to discredit his testimony. It would unduly burden this opinion to do so. Instead we merely set forth two instances for purposes of illustration.

At one point Galbraith was being questioned regarding his assertion that he could no longer perform the work required in his business. The following exchange occurred regarding one particular job:

"Q. Well, didn't you have to personally do bulldozing with farm machinery?

A. I had to do that personally, yes, sir.

Q. Right. Now that was what, four months after the accident?

A. I did not work the bulldozer, sir.

Q. You didn't work the bulldozer?

A. I might have been on one bulldozer one time, but that was it."

Earlier he had been asked about whether he had complained of any injury to the police at the time of the collision. During that portion of his testimony the following occurred:

"Q. I believe you told the jury that as soon as this accident took place you felt some pain and you knew that you had an injury, is that right?

A. That is correct.

Q. Did you tell the police anything about it?

A. He asked me if I was all right and I told him, 'No. I am going to have this gentleman take me where I want to go.'

Q. The—when they asked you if you were all right, you said you were all right, didn't you?

A. Well, you like to think you're all right.

Q. Well, to—my simple question is, when the police made their investigation some fifteen or twenty minutes after the accident occurred, in spite of what you told the jury about feeling some pain, you never mentioned it to the police did you?

A. He suggested that I get someone to come and get me."

He was then reminded that in the deposition he had given prior to trial he had stated that he had made no complaint to the police about any injury.

Galbraith's credibility was for the jury. If they chose to discredit his testimony, they might well have concluded that he failed to establish by a preponderance of the evidence any damages suffered from the collision except those stipulated. *Niemeyer, supra; Schutz, supra.*

Galbraith asserts also that during *voir dire* examination a prospective juror, who was a chiropractor, erroneously recalled treating Galbraith for a low back pain prior to the collision. However, no remedial action of any sort was sought by Galbraith at any time prior to the conclusion of the trial. Accordingly, no error was preserved for appeal. *Robinson* v. *State* (1973), 260 Ind. 517, 297 N.E.2d 409.

Judgment affirmed.

Staton, P.J., and Hoffman, J., concur.

NOTE.—Reported at 326 N.E.2d 634.