Matthew **RIDGEWAY**, Appellant–Plaintiff,

v.

Mark **TESHOIAN**, Appellee–Defendant.

No. 89A04–9712–CV–551.

Court of Appeals of Indiana.

Sept. 22, 1998.

Robert J. Delaney, Williams, Delaney & Simkin, Richmond, for Appellant–Plaintiff.

W. Brent Threlkeld, Robert A. Durham, Rocap, Witchger & Threlkeld, Indianapolis, for Appellee–Defendant.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

In this negligence case, Plaintiff Matthew Ridgeway appeals from the trial court's entry of a final judgment in favor of Defendant Mark Teshoian after a jury returned a verdict in favor of Ridgeway but awarded zero damages.

We affirm.

### ISSUES [1]

Ridgeway presents three issues on appeal, two of which we find to be dispositive:

I.   Whether the jury's award of zero damages was within the scope of the evidence.

II.   Whether the trial court committed reversible error by excluding certain testimony that Ridgeway lost baseball scholarships or financial aid as a result of his accident.

### FACTS AND PROCEDURAL HISTORY

On October 6, 1993, Matthew Ridgeway, then a seventeen year-old senior at Richmond High School, stopped at an intersection in Richmond while driving to school. Mark Teshoian, also a high school student, stopped his vehicle approximately six feet behind the vehicle driven by Ridgeway. Without paying attention, Teshoian released the brakes, and the car began rolling forward with an idle engine. A passenger in Teshoian's vehicle yelled, "Watch out!" (R. 753). As Teshoian applied the brakes, his car bumped into the Ridgeway's vehicle. The contact between the two vehicles caused some scratches on the bumper of Ridgeway's vehicle. At the time of the incident, Ridgeway was wearing a shoulder harness and lap belt, and his body did not hit any part of the interior of the car. Ridgeway's head did not strike the headrest, which had been positioned to contact the back of his head if he leaned backwards against the seat. Also, his chin did not hit his chest, and his neck did not move outside its normal motion. Ridgeway did not feel pain immediately after the accident. According to Ridgeway's best friend, Ridgeway did not appear to be injured on the day of the accident.

Ridgeway's father took him to see a doctor on the day following the accident. After several days, Ridgeway's father called the doctor and requested a referral to an orthopedic surgeon. After a visit with this surgeon, Ridgeway's father contacted another surgeon's office seeking a referral to a doctor who could examine and rehabilitate Ridgeway. Ridgeway was eventually referred to a physiatrist, Dr. Leslie Schutz.

Dr. Schutz treated Ridgeway on three occasions for his alleged injuries. A bone scan ordered by Dr. Schutz was unremarkable, and Ridgeway's gait, sensory responses and strength in his upper extremity were all normal. Dr. Schutz treated Ridgeway for cervical pain and limited range of motion in the neck secondary to a hyperflexion-extension injury. She prescribed physical therapy for Ridgeway. Neither Dr. Schutz nor Robert Myers, the physical therapist who treated Ridgeway, ever restricted Ridgeway from engaging in specific physical activities. Dr. Schutz terminated treatment with Ridgeway on December 6, 1993. At that time, Ridgeway had essentially a normal range of motion, and there was no objective reason why he could not participate in basketball. Dr. Schutz informed Ridgeway's father that Ridgeway's "problems may be psychosomatic," and that there was nothing she could do for him. (R. 833). Ridgeway subsequently

---

1.   This court issued an order granting Ridgeway's petition to file an amended brief to challenge the trial court's entry of judgment in favor Teshoian after the jury returned a plaintiff's verdict for zero damages. In his Appellee's Brief, Teshoian claims that we should summarily affirm the trial court's judgment because Ridgeway did not challenge the trial court's order of judgment in his original Appellant's Brief. Teshoian raises the same argument he made in his motion to dismiss and motion to reconsider the granting of permission to file amended brief. This court denied both motions. We see no reason to alter these prior rulings.

sought treatment from a strength trainer at Richmond High School and a chiropractor. The chiropractor did not restrict Ridgeway's physical activities.

After the accident, Ridgeway stopped playing on the varsity tennis team. He also did not compete for a position on the varsity basketball team. Although Ridgeway was a member of the varsity baseball team during his senior year, he did not perform as his coaches had expected or compete at the same level as he had during the prior summer baseball season.

On May 31, 1994, Ridgeway, and his parents, Robert and Judy Ridgeway, filed a complaint for damages against Teshoian. Ridgeway sought damages for his pain and suffering and any future medical care, treatment and services. Ridgeway's parents sought compensation for reasonable expenses incurred for Ridgeway's medical treatment and services.

A jury trial was held July 7–10, 1997. At trial, Teshoian admitted that the collision was his fault. Thus, the only issue was the amount, if any, of Ridgeway's damages proximately caused by the collision. The parties presented conflicting evidence regarding whether the accident caused the physical and mental injuries alleged by Ridgeway. Ridgeway presented the testimony of Dr. Schutz, who opined that Ridgeway suffered from a hyperflexion-extension injury as a result of the accident. In support of this conclusion, she explained that such hyperflexion-extension injuries could occur in rear-end motor vehicle accidents involving speeds as low as five miles per hour. However, Teshoian presented evidence that the vehicle that he was driving was traveling less than five miles per hour at the time of impact. David Everhart, a former damage appraiser, testified that the rear bumper on Ridgeway's vehicle was equipped with energy absorbers that would travel five to eight inches toward the frame of the car at an impact of five miles per hour. Everhart further indicated that Ridgeway's energy absorbers traveled only two to three inches as a result of the accident.

There was also other evidence presented which suggested that Ridgeway did not sustain a hyperflexion-extension injury. Physical therapist Robert Myers acknowledged

that "a hyper-flexion/extension injury by its very definition means that the muscle, tendons and the soft tissues in that area had been moved beyond their normal movement so that they are stretched." (R. 728). Ridgeway testified, however, that his neck did not move outside its normal motion, that his chin did not strike his chest, and that his head did not strike the headrest in his vehicle as a result of the accident.

Evidence was also conflicting as to whether Ridgeway suffered any mental injuries as a result of the accident. In support of his claim of mental suffering, Ridgeway presented the testimony of Dr. Gregory Karch, a psychologist. During his evaluation of Ridgeway, Dr. Karch administered three tests: the Minnesota Multiphasic Personality Inventory—II ("MMPI–2"); the Hardiness Scale ("HS"); and the Impact of Events Scale ("IES"). Based upon the results of the IES test, Dr. Karch opined that Ridgeway suffered from "a low grade depression" or "a subclinical level of dysfunction" as a result of being unable to attain his aspirations in athletics. (R. 1017, 1019). Dr. Karch also testified that Ridgeway had symptoms of intrusion and avoidance. However, Dr. Karch also testified that the clinical profile from the MMPI–2, which is the most sophisticated of the three tests administered to Ridgeway, revealed that Ridgeway did not suffer from any "clinically significant, psychological problems" and was a "non-stressed" individual. (R. 1012, 1066). Dr. Karch concluded that "[w]e should all want [a profile] like that." (R. 1066). The HS test results were in complete harmony with the MMPI–2 results and revealed that Ridgeway was a resilient individual and "very capable of dealing with stressful events." (R. 1071). Dr. Jane Duckworth, a psychologist and retired professor of psychology, testified that Ridgeway was normal in terms of intrusive type thoughts. Dr. Duckworth further testified that MMPI–2 results failed to reveal that Ridgeway had had a traumatic response or an avoidance to any particular issue.

During closing arguments, Teshoian's counsel strenuously argued that Ridgeway suffered no injuries as a result of the acci-

dent. On the issue of damages, the jury was instructed as follows:

> If you determine that the plaintiffs are entitled to recovery, you must determine the amount of money which will fairly compensate the plaintiffs for those elements of damage which were proven by the evidence to have resulted from the negligence of the defendant. You should consider in determining Matthew Ridgeway's award:
>
> (a) The nature and extent and duration of the injuries;
>
> (b) Any physical pain and mental suffering experienced and reasonably certain to be experienced in the future as a result of the injuries and the reasonable expenses of any future medical care, treatment, and services.
>
> You should consider in determining plaintiffs' Robert and Judy Ridgeways' award:
>
> (a) The reasonable expenses incurred for necessary medical care, treatment and services.
>
> You are to determine whether these elements of damage have been proved by a preponderance of the evidence relating to damages. Your determination must be based on that evidence and not on guess or speculation.
>
> As to matters which are susceptible of proof, such as the pecuniary value of pain, suffering, disability and impairment, they are left to your sound discretion. It is only necessary that the plaintiffs prove, by a preponderance of the evidence, the nature and extent of such pain, suffering, disability, and impairment, and it is you, the jury, to decide the monetary value of each such element of their damages.
>
> Instructions regarding monetary compensation are given to guide you in arriving at the amount of your verdict only in the event that you find the plaintiffs are entitled to recover.
>
> If from the evidence and the instruction applied thereto, you find that the plaintiffs should not recover, you should disregard the instructions as to the measure of compensation.

(R. 370–71). It appears from the record that the jury was only given a single plaintiff's verdict form. After deliberating, the jury returned the plaintiff's verdict which reads as follows:

> We, the jury, find for the plaintiffs, Robert Ridgeway, Judy Ridgeway, and Matthew Ridgeway, and against the defendant, Mark Teshoian, and award to plaintiff Matthew Ridgeway for his damages the amount $ 0 , and award to plaintiffs Robert Ridgeway and Judy Ridgeway for reasonable medical expenses incurred the sum of $3,004.00.

(R. 374). Apparently interpreting the plaintiff's verdict for zero damages as an improperly expressed defendant's verdict, the trial court entered judgment in favor Teshoian.[2]

Ridgeway filed a motion to correct errors seeking additur and contending that the verdict of zero damages was inadequate and not within the scope of the evidence. The trial court denied Ridgeways motion to correct errors, reasoning in part as follows:

> The jury had not been presented with a verdict form providing them with an opportunity to find for the defendant and against plaintiff Matthew Ridgeway while also finding for the plaintiff Robert Ridgeway and Judy Ridgeway, it not occurring to counsel or the Court that such a verdict would be likely, permissible or logical. The Court, in its final judgment, translated the jury's verdict and award of zero dollars to plaintiff Matthew Ridgeway into a defendant's verdict as to Matthew Ridgeway and entered judgment for defendant and against plaintiff Matthew Ridgeway....

\* \* \* \*

> There was sufficient evidence to indicate that the collision could not have caused the injuries claimed. The jury may have concluded that Matthew [ ] was not injured but that the medical precautions to explore and treat his perceived injuries by his concerned parents were reasonable in which case the award to his parents is arguably

---

**2.** Although the trial court entered judgment in favor of Teshoian on Ridgeway's complaint, the trial court entered judgment in favor of Ridgeway's parents and against Teshoian in the

amount of $3,004 in accordance with the jury's verdict. Neither Teshoian nor Ridgeway's parents appeal this judgment.

improper, or the jury may have concluded that any injuries received were more than compensated by the medical care and attention received and for which the defendant had been held liable. . . .

(R. 426). This appeal ensued.

## DECISION

### I. *Inadequate Verdict*

Ridgeway argues that the jury's verdict for zero damages was not within the scope of the evidence and therefore inadequate. He further claims that the trial court erred when it failed to correct the jury's verdict with additur to conform with the evidence. We disagree.

■ All damages directly attributed to the wrong done are compensable in tort actions. *Symon v. Burger*, 528 N.E.2d 850, 852 (Ind.Ct.App.1988). Our supreme court has stated that a jury is to be afforded great latitude in making damage award determinations. *Kimberlin v. DeLong*, 637 N.E.2d 121, 129 (Ind.1994), *cert. denied* 516 U.S. 829, 116 S.Ct. 98, 133 L.Ed.2d 53 (1995). Awards for pain, suffering, fright, humiliation and mental anguish are particularly within the province of the jury because they involve the weighing of evidence and credibility of witnesses. *Landis v. Landis*, 664 N.E.2d 754, 757 (Ind.Ct.App.1996), *trans. denied.*

■ Accordingly, Indiana courts have established a strict standard of review for appeals predicated upon a claim that an award of damages is inadequate. We neither will reweigh the evidence nor judge the credibility of the witnesses, but will consider only the evidence favorable to the jury's award. *Manzo v. Estep*, 689 N.E.2d 474, 475 (Ind.Ct. App.1997). A verdict should be set aside only when it is apparent from a review of the evidence concerning the injuries that the amount of damages assessed by the jury is so small as to indicate that the jury was motivated by prejudice, passion, partiality, corruption or considered some improper element. *Dee v. Becker*, 636 N.E.2d 176, 177 (Ind.Ct.App.1994). If the damage award falls within the bounds of the evidence presented at trial, we must affirm. *Adams v. McClevy*, 582 N.E.2d 915, 918 (Ind.Ct.App. 1991).

Jury verdicts which find negligence on the part of the defendant but award zero damages are not new to this court. In several cases, this court has refused to invade the province of the jury and affirmed plaintiff's verdicts awarding zero damages. *See Schutz v. Rose*, 136 Ind.App. 165, 196 N.E.2d 285, 287 (1964)(award of zero damages not contrary to evidence presented "inasmuch as medical testimony was admitted by which the jury could reasonably infer that the injuries complained of by the plaintiff [ ] were not sustained in the collision, but were merely developments associated with old age or a prior occurrence, etc."); *Niemeyer v. Lee*, 144 Ind.App. 161, 245 N.E.2d 178 (1969)(plaintiff not entitled to a new trial because the evidence was conflicting as to whether the plaintiff's injury had been proximately caused by the defendant's negligent conduct); *Faulk v. Chandler*, 408 N.E.2d 584, 587 (Ind.Ct.App.1980)(affirming plaintiff's verdict awarding zero damages where evidence as to plaintiff's injuries, their causal connection with the accident and resulting damages was, at best, conflicting).

In *Niemeyer*, the court stated, concerning a plaintiff's verdict for zero damages, that "the jury's verdict means that appellees-defendants were legally responsible for whatever damages proximately resulted from the accident, but that appellant sustained no damage, and, further, that the verdict was so understood by all concerned." 245 N.E.2d at 180. Following this reasoning, Teshoian's admission that the accident resulted from his negligent operation of his vehicle did not, in any way, establish that Ridgeway sustained physical or mental injuries. Accordingly, Ridgeway was still required to prove actual damages occasioned by injury before he could recover.

■ Upon reviewing the entire record we are satisfied that the jury might have reasonably concluded that Ridgeway failed to sustain his burden of proving damages proximately caused by the accident. Teshoian repeatedly and vehemently disputed that the accident resulted in injury to Ridgeway, and the evidence was conflicting in this regard. Dr. Schutz testified that hyperflexion-extension injuries could occur in accidents involv-

ing impacts as low as five miles per hour. However, Teshoian presented expert testimony that demonstrated that Teshoian's vehicle was traveling less than five miles per hour at the time it bumped into Ridgeway's vehicle. Also, physical therapist Robert Myers indicated that a hyperflexion-extension injury requires muscles, tendons, and soft tissues to move beyond their normal movements such that they are stretched. However, there was evidence that the forces involved in the accident did not cause Ridgeway's muscles, tendons and soft tissue to stretch to such an extent as to cause his hyperflexion-extension injury. The photographs of Ridgeway's bumper after the accident do not reveal any damage to the vehicle, suggesting that the forces involved in the collision were minimal. Ridgeway's head did not strike the headrest, which had been positioned to contact the back of Ridgeway's head if he leaned backwards against the seat. Importantly, Ridgeway acknowledged that his chin did not hit his chest and that his neck did not move outside its normal motion. Therefore, there was conflicting evidence as to the causation of Ridgeway's physical injuries.

Further, the testimony was, at best, conflicting regarding whether Ridgeway sustained any mental injuries as a result of the accident. Given this conflicting evidence, the jury could have concluded that Ridgeway had failed to show by a preponderance of the evidence that Teshoian's negligence was the proximate cause of injury to Ridgeway. The jury's verdict can be clearly explained by reference to the evidence, rather than by juror passion, partiality, corruption or consideration of an improper element. Therefore, we affirm the jury's verdict awarding zero damages.[3]

## II. *Expert Opinion Testimony*

Ridgeway also contends that the trial court committed reversible error in excluding the expert testimony of his high school baseball coaches, John Cate and Tim Lebo, as to Ridgeway's probable loss of college athletic scholarships or financial aid as a result of the

injuries he allegedly sustained in the accident. We disagree.

■ Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Kelley v. Watson,* 677 N.E.2d 1053, 1059 (Ind.Ct.App.1997). Likewise, this court has stated that error in the exclusion of evidence is not grounds for reversal unless our refusal to reverse would be "inconsistent with substantial justice." *White v. White,* 655 N.E.2d 523, 530 (Ind.Ct. App.1995); *see* Ind. Trial Rule 61.

■ Here, we cannot conclude Ridgeway suffered prejudice as a result of the excluded evidence. First, Cate and Lebo's testimony regarding Ridgeway's ability to obtain a college baseball scholarship or financial aid was relevant only to the extent that Ridgeway could demonstrate that he suffered from a physical or mental injury as a result of the accident which adversely affected his athletic ability. The jury apparently concluded that Ridgeway had not suffered any physical or mental injuries as a result of the accident; otherwise, it would have awarded some damages to Ridgeway. Therefore, any error in the exclusion of evidence regarding loss of athletic scholarships or financial aid is harmless.

■ Furthermore, where evidence is erroneously excluded, the error is harmless if the excluded evidence was otherwise presented to the jury. *Meade v. Levett,* 671 N.E.2d 1172, 1178 (Ind.Ct.App.1996). Here, although Cate and Lebo were not permitted to testify as to Ridgeway's probable loss of college athletic scholarships or financial aid as a result of his injuries, both were permitted to provide testimony substantially similar to that excluded by the trial court. Cate was permitted to opine that his former baseball players of comparable ability to Ridgeway's had received baseball-related financial assistance to attend college. Similarly, Lebo was permitted to opine that Ridgeway had possessed all of the qualities that a college baseball recruiter would be looking for, assuming

---

**3.** Ridgeway also contends that the trial court erred in entering judgment in favor of Teshoian after the jury returned a verdict in his favor but awarded zero damages. Because we have af-

firmed the jury's award of zero damages, any error in entering judgment in favor of Teshoian is harmless.

that he had normally progressed from the end of his junior year. The fact that testimony substantially similar to the excluded testimony was presented to the jury further supports our conclusion that Ridgeway's substantial rights were not affected. We find no reversible error.

Judgment affirmed.

BAKER and BAILEY, JJ., concur.